EULA M. CHANDLER v. J. W. JONES ET. AL.

(Filed 22 November, 1916.)

**1. Contracts Voidable—Infants.**

A contract made with an infant is voidable, and he may ratify or disaffirm it at his election, upon his attaining his majority.

**2. Same—Benefits Retained—Credits—Purchase Price.**

When an infant has received money under a contract he has made, and it is consumed or wasted during his minority, he may recover the same; but if it has been used for his benefit and invested in property which he has in hand, he cannot retain the property without allowing a just credit for the money received by him.

**3. Same—Majority—Acquiescence—Ratification.**

Where money has been paid to an infant under a contract made with him during his minority which he has invested in lands, his continuing to hold and enjoy the property after reaching his majority is evidence of his ratification of the contract, which has been held to be presumed after three years.

**4. Same—Feme Covert—Disability Removed—Statutes.**

A minor contracted for the sale of her lands and became a *feme covert* before reaching her majority, with agreement that upon payment of a certain sum the lands would go to the purchaser's wife for life, and at her death to him. The purchaser paid the *feme* grantor and her husband the purchase price, with which they paid off a mortgage on her lands. *Held*, whether the mortgaged lands were those of the wife or not, she was advantaged or benefited by the payment, at least to the extent of her dower right, and she is held to have ratified her contract by her acquiescence twenty-three years after receiving the payment, nineteen years after attaining her majority, and more than three years after the statute had removed her disability as a married woman.

**5. Same—Acts of Disaffirmance—Actions—Estates Outstanding.**

An infant contracted with a husband to convey her lands for a certain consideration, a life estate to the wife with remainder to her husband, the purchaser, and received the agreed price therefor. *Held*, after coming

of age the party could have evinced her disaffirmance of her contract by the return of the purchase money or some other unequivocal act, though she may not be permitted to sue for the land during the continuance of the outstanding life estate; and the failure of the infant to take such action after coming of age may be evidence of the confirmation of the contract.

APPEAL from *Ferguson, J.,* at August Term, 1916, of GUILFORD, in an action to recover the sum of $600 alleged to be due by contract.

The defendant admitted the execution of the contract and alleged that he had paid the sum of $500 thereon.

On 30 April, 1890, the defendant and his wife entered into a contract under the terms of which the defendant was to become the owner of a certain tract of land if he survived his wife, upon the payment of $600 to the plaintiff, who was then Miss Eula Vanstory, and it is upon this contract that the plaintiff is suing to recover the $600.

The defendant was examined as a witness in his own behalf and testified as to the payment of $500 as follows:

Q. State whether or not you ever made any payments to the plaintiff on this contract, and, if so, how much?

To this the plaintiff objected.

By permission of the court, the witness was examined by plaintiff's counsel, and the witness testified that the plaintiff was Eula Vanstory before she was married; that the alleged payment was made seven months after her marriage, and while she was yet only 16 or 17 years of age.

Upon objection and exception by plaintiff to each and all of the following questions and answers, taken and noted in apt time, Mr. Jerome, the defendant's counsel, was allowed to proceed as follows:

Q. State whether or not Mrs. Chandler, the plaintiff in this case, was married at the time you made this payment? A. Yes; she was married seven months before that. She was married on the 2d day of February, and it was in the fall when the payment was made, the November after her marriage. The mortgage will show the date of this payment.

Q. How came you to pay her the sum of $500 on 24 November, 1893?

Q. On 24 November, 1893, state whether or not you paid Mrs. Chandler any money. A. A check for $500.

Q. What was done with this check? A. Turned over to the man of whom they bought the land, J. A. Lambeth, who is so ill he could not come to court, and the mortgage was canceled, and it is in his possession.

Q. State whether or not that check was collected. A. Yes, it was collected.

Q. That was in 1893? A. Yes, sir.

Q. How old was the plaintiff at that time? A. She had been married a few months.

Q. Was she married in the early part of the year? A. Yes, the first of February.

Q. And this payment was made in November afterwards? A. Yes, the money was paid.

Q. Since you made the payment, in November, 1893, has the plaintiff ever claimed or demanded the payment of that $500 of you?

Q. When did you first hear of her claiming you had not paid her the $500? A. Soon after my wife died; it was not due until she died. I had the money on hand and let them have it as an accommodation, and I have been out of the use of the money very nearly twenty-three years."

The wife of the defendant died in November, 1915.

At the conclusion of the evidence, the court, "being of the opinion that the alleged payment having been made to the plaintiff when she was a minor not exceeding 16 years of age in November, 1893; and Mrs. Jones, wife of the defendant, not having died until November, 1915, and it not appearing to the court or claimed by the defendant that the money alleged to have been paid to the plaintiff was invested in land, the title to which was made to the plaintiff, the court is of the opinion that the alleged payment to the infant plaintiff is not a payment under the contract, and excludes the evidence," to which the defendant excepted.

His Honor then directed the jury to answer the issue in favor of the plaintiff, and the defendant excepted.

Judgment was entered upon the verdict, from which the defendant appealed.

*King & Kimball for plaintiff.*
*Cooke & Fentress and Jerome & Jerome for defendant.*

ALLEN, J. It was held by his Honor, as matter of law, that the payment of $500 by the defendant to the plaintiff, while she was a minor, did not operate to discharge *pro tanto* his debt to her, and, as the jury was not permitted to consider the evidence introduced by the defendant, we must, for the purposes of this appeal, accept it as true, and give the defendant the benefit of all reasonable inferences that may be deduced from it.

When it is so considered it establishes that a contract was entered into on 30 April, 1890, by the defendant and his wife, by virtue of which the defendant was to become the owner of a certain tract of land if he survived his wife, upon the payment of $600 to the plaintiff, who was then Eula Vanstory; that the said Eula Vanstory intermarried with A. D. Chandler before she was 21 years of age; that she and her

husband bought a tract of land of one Lambeth; that there was a mortgage upon the land; that the plaintiff and her husband requested the defendant to advance the sum of $500 on the amount due by him to the plaintiff under the contract with his wife for the purpose of paying off and discharging the mortgage on the land bought by the plaintiff and her husband; that the defendant advanced the said sum to the plaintiff and her husband, and that it was used in paying off and discharging the said mortgage; that the plaintiff became 21 years of age about nineteen years ago, and that she has done no act disaffirming said payment until the commencement of this action.

Do these facts furnish evidence of a ratification by the plaintiff or can she now disaffirm the same and recover the full amount of $600?

The contract of an infant is voidable and not void, and it may be either ratified or disaffirmed, upon attaining majority, at the election of the infant.

If money is paid to an infant upon a contract, and it is consumed or wasted, the infant may recover the full amount due under the contract; but if the money is used for his benefit and he has in hand property in which it has been invested, he cannot retain the property without allowing a just credit for the money paid to him; and if after becoming of age he continues to hold the property and uses it or disposes of it, this is evidence of a ratification. *Caffey v. McMichael,* 64 N. C., 508; *Skinner v. Maxwell,* 66 N. C., 48; *MacGreal v. Taylor,* 167 U. S., 688.

In the last case cited, and in the note to this case as reported in 42 Law Ed., p. 326, a great many authorities are cited in support of these principles.

Let us then see if the plaintiff has received any benefit from the payment of the $500 by the defendant which she still enjoys, and whether since she became of age she has done any act ratifying the payment made by the defendant.

If there was a mortgage upon the land bought by the plaintiff and her husband, and if at their request the defendant advanced $500 to discharge the mortgage lien and it was so used, then upon a disaffirmance of the payment by the plaintiff, the defendant had the right in equity to be subrogated to the right of the creditor who held the mortgage, and to enforce payment of the mortgage as against the plaintiff and her husband.

This is directly decided in the case of *MacGreal v. Taylor, supra,* and is in accord with the decisions in *Cutchin v. Johnston,* 120 N. C., 55, and *Brown v. Harding,* 171 N. C., 691.

If so, the plaintiff and her husband, if they still retain the title to the land bought from Lambeth, are holding the land freed of an encumbrance which has been paid off by the defendant with money which the

plaintiff is now seeking to recover, and if the Lambeth land is not now owned by the plaintiff and her husband, it must have been conveyed by them after she reached her majority, clear of the mortgage lien; and in either event it would furnish evidence of a ratification.

It does not clearly appear from the record whether the title to the Lambeth land was taken in the name of the plaintiff or her husband; but if the title was to the latter, which is the strongest view for the plaintiff, and it has not been disposed of, the plaintiff derives the benefit from the payment of the money of having her dower right cleared of the encumbrance and of having the defendant to forego his right to be subrogated to the right of the mortgage creditor, which, of course, he could not do if he is allowed the credit of $500.

The *MacGreal case* is also authority for the position that if the plaintiff joined in a conveyance of the Lambeth land free from encumbrances after becoming of age, with knowledge of all the facts, that this would be a ratification, and that if she and her husband now own the land, that they have in hand, in legal effect, the money of the defendant, since they do not recognize the right of the defendant to be subrogated to the rights of the mortgage creditor.

In that case Mrs. MacGreal, while an infant, executed a deed of trust to secure $8,000 borrowed from Mrs. Utermehle, which was used in paying certain mortgage debts on the land conveyed in the deed of trust, and when she came of age she refused to abide by the deed of trust, on account of infancy.

The Court in dealing with the question said: "These debts having been paid by Mrs. Utermehle, the appellees are entitled, in equity, to be subrogated to the rights of the persons who held them, and who were about to foreclose the liens therefor when the application was made to Mrs. Utermehle for the loan of $8,000 to be used in meeting those debts and in improving the lot in question. 1 Jones Mortg., 874, 877, and authorities cited. And within the meaning of the rule that, upon the infant's disaffirmance of his contract, the other party is entitled to recover the consideration paid by him which remains in the infant's hands or under his control, it may well be held—and gross injustice will be done in this case if it be not so held—that the money borrowed from Mrs. Utermehle is, in every just sense, in the hands of Mrs. MacGreal. To say that the consideration paid to Mrs. MacGreal for the deed of trust of 1889 is not in her hands, when the money has been put into her property in conformity with the disaffirmed contract, and notwithstanding such property is still held and enjoyed by her, is to sacrifice substance to form, and to make the privilege of infancy a sword to be used to the injury of others, although the law intends it simply as a shield to protect the infant from injustice and wrong."

CHANDLER v. JONES.

In addition to this, the plaintiff has waited nearly twenty-three years after the payment was made, nineteen years after attaining her majority, and more than three years after her disabilities as a married woman were removed, without giving any indication that she disaffirmed the payment or that she would seek to recover the full amount of $600 from the defendant, and it was decided in *Weeks v. Wilkins,* 134 N. C., 524, that an infant will be held to have fully ratified his contract unless he disaffirms it within a reasonable time, which is three years after becoming of age.

It is true, as contended by the plaintiff, that she did not have a right of action to recover the $600 until the death of the wife of the defendant, which was in October, 1915, and that the bringing of an action is a disaffirmance; but this contention was also met in *Weeks v. Wilkins;* and it was held that although the right of action did not exist, that the infant could in some other way give evidence that she did not intend to abide by the contract.

In the *Weeks case* the plaintiff had executed a deed, while an infant, for land in which his mother owned a life estate. He commenced an action to recover the land more than three years after becoming of age and within three years after the death of his mother. The Court quotes from Devlin on Deeds: "The most reasonable rule seems to be that the right of disaffirmance should be exercised within a reasonable time after the infant attains his majority, or else his neglect to avail himself of this privilege should be deemed an acquiescence and affirmation on his part of his conveyance. The law considers his contract a voidable one on account of its tender solicitude for his rights and the fear that he may be imposed upon in his bargain. But he is certainly afforded ample protection by allowing him a reasonable time after he reaches his majority to determine whether he will abide by his conveyance executed while he was a minor, or will disaffirm it. And it is no more than just and reasonable that if he silently acquiesces in his deed and makes no effort to express his dissatisfaction with his act, he should, after the lapse of a reasonable time, dependent upon circumstances, be considered as fully ratifying it," and adds: "We think this is a just and reasonable rule." The Court then says: "The statute gives him three years after arrival at majority within which to bring his action against a disseizor. It seems to us that the same time, by analogy, should be fixed as the period within which he should determine whether he will disaffirm his deed. But it is said that Mrs. Hester Weeks owned the life estate, and that pending such estate he had no right of action to sue for the possession of the land. We do not think this material. His right to disaffirm his deed was entirely independent of his right to the possession of the land. He could easily have disaffirmed by returning the purchase money or by some other unequivocal act."

This case was affirmed on both points in *Baggett v. Jackson,* 160 N. C., 32; and if applicable to deeds, why should not the same rule prevail as to other contracts?

We are therefore of opinion that there is evidence of ratification which ought to be submitted to a jury.

New trial.