J. U. McCORMICK, DOING BUSINESS AS CAROLINA THEATRE SUPPLY COMPANY, v. C. T. CROTTS.

(Filed 14 May, 1930.)

1. **Infants B a—Infant may disaffirm contract after filing answer and replevying property in action for purchase price.**

An infant may disaffirm his contract at any time at or before his arriving at full age without liability, upon the restoration of the property, for its use, deterioration, or damages for its detention, and where in an action for the purchase price ancillary proceedings in claim and delivery are instituted, the filing of an answer by the infant without a guardian, and his retention of the property under a replevy bond will not bar him from thereafter setting up the plea of infancy, and upon judgment for the return of the property, the infant is entitled to recover the amount paid by him on the purchase price, and is not liable on the replevy bond for the retention or deterioration of the property while in his possession thereunder.

2. **Replevin C b—Liability of sureties on replevy bond of infant is limited to liability of infant by express terms of bond.**

The sureties on a replevy bond given by an infant in claim and delivery proceedings are not liable for damages beyond the terms of the bond stipulating that their obligation is to answer for the default of the

principal, on a judgment that may be had against him, and they cannot be held liable in excess of the liability of the infant principal, and where the infant has disaffirmed the contract and bond, the plaintiff is entitled only to judgment for the return of the property, and neither the infant nor the sureties on his bond is liable for deterioration of the property or damages for its detention. C. S., 836.

Appeal by defendant from *Stack, J.,* at September Term, 1929, of Montgomery.

Civil action to recover on certain promissory notes and to foreclose chattel mortgage given as security for the payment thereof.

On 15 February, 1925, the plaintiff sold to the defendant, as evidenced by conditional sales contract, "One Superior Machine complete and Snaplite Lens," for use in the Garden Theatre at Biscoe, N. C., and took from the defendant a number of promissory notes secured by said conditional sales contract.

Default having been made in the payment of said notes, or a part of them, this action was instituted 6 October, 1925, with ancillary proceedings in claim and delivery for the property described in the conditional sales contract. The defendant replevied, gave bond under the statute, and held the property. On 31 October, thereafter, the defendant filed answer and set up that the machine and lens were defective and not as represented.

On 1 June, 1927, the defendant informed the court that he was a minor, without general or testamentary guardian, and asked that a guardian *ad litem* be appointed to represent him in this action. This was done. Thereafter, on 5 October, 1927, the guardian *ad litem* filed answer, repudiated the purchase of said machinery on the ground of the defendant's infancy, tendered the property back to the plaintiff, and demanded a return of so much of the purchase price as had already been paid. The plaintiff denied the infancy of the defendant, and upon the issues thus joined, the following verdict was rendered by the jury at the September Term, 1928, Montgomery Superior Court, Hon. John M. Oglesby, judge presiding:

"1. What was the value of the machine described in the complaint at the time it was taken in claim and delivery? Answer: $387.50.

"2. What is the present value of said property? Answer: $87.50.

"3. Is the defendant, C. T. Crotts, a minor? Answer: Yes.

"4. What amount on the notes and contract described in the complaint is still unpaid? Answer: $276.40, with interest due from 15 July, 1925.

"5. What amount has the defendant paid on said property? Answer: $298.20."

Judgment was not signed at the trial term, as the presiding judge was called away for providential reasons, but, by consent, the matter was

submitted to Hon. A. M. Stack, judge presiding at the September Term, 1929, who held that the defendant, by first filing answer and replevying the property in this action, was thereafter estopped from setting up his infancy, and judgment was accordingly entered on the verdict for the plaintiff.

The defendant appeals, assigning errors.

*No counsel appearing for plaintiff.*
*H. M. Robins and J. A. Spence for defendant.*

STACY, C. J., after stating the case: As the defendant was at liberty to avoid the contract in question at any time during his minority, or upon arrival at full age *(Collins v. Norfleet-Baggs,* 197 N. C., 659), we fail to see how he can be estopped from asserting this right by his own acts in filing answer and replevying the property in question prior to the appointment of a guardian *ad litem. Hicks v. Beam,* 112 N. C., 642, 17 S. E., 490; *Tate v. Mott,* 96 N. C., 19, 2 S. E., 176. Even if the matter had gone to judgment, without the appointment of a guardian *ad litem* and during the minority of the defendant, he would still have had his remedy. *Hicks v. Beam, supra.*

Under the principles announced in *Collins v. Norfleet-Baggs, supra,* and other cases, the defendant is entitled to disaffirm the contract and recover the consideration paid by him, with the limitation that he must restore whatever part he still retains of that which came to him under the agreement, but he is not required to account for the use or depreciation of the property while in his possession, or for its loss, if squandered or destroyed, for this is the very improvidence against which the law seeks to protect him. *Hight v. Harris,* 188 N. C., 328, 124 S. E., 623; *Morris Plan Co. v. Palmer,* 185 N. C., 109, 116 S. E., 261; *Cole v. Wagoner,* 197 N. C., 692; *Millsaps v. Estes,* 137 N. C., 535, 50 S. E., 227; 14 R. C. L., 238.

The judgment, therefore, should be that the defendant recover of the plaintiff the sum of $298.20, the amount paid under the contract, with interest from 6 October, 1925, and that the plaintiff have and recover the property in question in its present condition, but no more. *Morris Plan Co. v. Palmer, supra.*

Nor would it seem that the liability of the sureties on the forthcoming bond should be held to be in excess of the defendant's liability thereunder. The obligation of the sureties on the redelivery bond of the defendant in the instant case is to answer for any default of the principal in said bond, to the extent of $500, for which the infant defendant may be adjudged legally bound. Note, L. R. A., 1917 A, 1191.

According to the terms of the bond (which is not in the exact language of the statute, C. S., 836), it is stipulated "that if the said prop-

erty be returned to the defendant it shall be delivered to the plaintiff, with damages for its deterioration and detention, together with the costs of the action, if such delivery be adjudged and can be had, and if such delivery cannot for any cause be had, that the plaintiff shall be paid such sum as may be recovered against the defendant for the value of the property at the time of the wrongful taking or detention, with interest thereon, as damages, for such taking and detention, together with the cost of this action." *Garner v. Quackenbush,* 188 N. C., 180, 124 S. E., 154; *Hendley v. McIntyre,* 132 N. C., 276, 43 S. E., 824; *Trust Co. v. Hayes,* 191 N. C., 542, 132 S. E., 466; *Motor Co. v. Sands,* 186 N. C., 732, 120 S. E., 459; *Randolph v. McGowans,* 174 N. C., 203, 93 S. E., 730; *Wallace v. Robinson,* 185 N. C., 530, 117 S. E., 508.

But the defendant, still being a minor, may disaffirm this obligation, as well as the original one. *Hight v. Harris, supra.* Hence, the extent of the defendant's legal liability is to return so much of the property which came to him under the contract as he still has, without accounting for its use or depreciation while in his possession. *Collins v. Norfleet-Baggs, supra.* The plaintiff is entitled to judgment *de retorno habendo,* and no more. Note 69 L. R. A., 283. The sureties, it will be observed from the tenor of the forthcoming bond, are under obligation to return the property to the plaintiff, "with damages for its deterioration and detention, together with the costs of the action," in case. "such delivery (with damages and costs) be adjudged." *Hall v. Tillman,* 110 N. C., 220. Therefore, the liability of the sureties would seem to depend upon an adjudication directing "such delivery," which may not be had against the infant defendant, except as above indicated, simply *de retorno habendo. Hendley v. McIntyre, supra;* 23 R. C. L., 900.

This interpretation of the liability of the sureties on the defendant's forthcoming bond is strengthened by the circumstance that, in case a return of the property cannot for any reason be had, the sureties obligate themselves to pay to the plaintiff "such sum as may be recovered against the defendant" for the value of the property, etc. So that, if the sureties be released where the property cannot for any reason be returned, because, in such event, no recovery can be had against the defendant, it could hardly be said that a recovery of damages for its deterioration and detention was intended where the property is actually returned, though in a damaged condition. To hold otherwise would be to render the sureties liable for the deterioration and detention of the property and exculpate them from all liability in case of its total loss or destruction—a rather anomalous result. 23 R. C. L., 900.

It is true, there are a few exceptions to the general rule that the obligation of a surety is accessorial only, and that whatever discharges a principal discharges a surety. *Jones v. Crosthwaite,* 17 Iowa, 393.

Fraud, deceit, illegality, and the like, which would vitiate the contract of the principal, would also induce the discharge of the sureties, for these affect the character of the obligation. *Smyley v. Head,* 2 Rich. (S. C.), 590; *Nabb v. Koontz,* 17 Md., 283; *Kimball v. Newell,* 7 Hill (N. Y.), 116; *St. Albans Bank v. Dillon,* 30 Vt., 122; *Davis v. Statts,* 43 Ind., 103. But where one becomes a surety for the performance of a promise made by an infant, or a person incompetent to contract, the undertaking may not be purely accessorial, and the surety may be bound while the principal is not—the avoidance of such a contract being regarded as personal to the principal. Brandt on Suretyship, Vol. 1 (3 ed.), 352. Indeed, the disability of the principal, if understood by the parties, may be the very reason for requiring that security be given. *Winn v. Sanford,* 145 Mass., 302; *Yale v. Wheelock,* 109 Mass., 502.

And *Lobaugh v. Thompson,* 74 Mo., 600, may be cited as authority for holding the sureties on a replevin bond liable, while the principal, a *feme covert* under disability, was discharged. A similar suggestion was made in *Long v. Cockrell,* 55 Mo., 93. But in neither of these cases do we find the terms of the bond set out, nor a citation of the provisions of the statute under which it was given. See, also, *Stillwell v. Bertrand,* 22 Ark., 375.

It is the uniform holding of all the courts, however, that the sureties on a replevin or redelivery bond are not to be held beyond the terms of their contract or undertaking. 23 R. C. L., 900. It is upon this ground that we rest our present decision.

As supporting in tendency this position, or by way of analogy, it may be instanced that in *Laffoon v. Kerner,* 138 N. C., 281, 50 S. E., 654, the sureties on a stay bond were relieved from liability when pending the appeal from a justice's judgment and before trial in the Superior Court, the defendant obtained a discharge in bankruptcy from all his debts, including the plaintiff's claim, and interposed same by way of a plea in bar to plaintiff's suit. This was later approved in *Murray v. Bass,* 184 N. C., 318, 114 S. E., 303. See, also, *Fontaine v. Westbrooks,* 65 N. C., 528.

Likewise, in a number of olden cases, it was held that the emancipation of slaves seized in replevin relieved the obligors from their undertaking to return them. *Glover v. Taylor,* 41 Ala., 124; *Green v. Lanier,* 5 Heisk (Tenn.), 662; *Pait. v. McCutchen,* 43 Tex., 291.

Nothing was said in *Garner v. Quakenbush,* 187 N. C., 603, 122 S. E., 474 (on rehearing, 188 N. C., 180, 124 S. E., 154), which militates against our present position.

The case may seem to be a hard one, as the plaintiff was not aware of the defendant's minority at the time of the sale, nor does it appear that the sureties knew of his disability at the time of the execution of the

bond, but the dominant purpose of the law in permitting infants to disaffirm their contracts is to protect children and those of tender years from their own improvidence, or want of discretion, and from the wiles of designing men.

The cause will be remanded for judgment in accordance herewith.

Error, and remanded.