GASTONIA PERSONNEL CORPORATION v. BOBBY L. ROGERS, A MINOR, REPRESENTED HEREIN BY HIS GUARDIAN AD LITEM, W. MARSHAL LAFAR, DEFENDANT

No. 23

(Filed 11 February 1970)

**1. Infants § 1— duration of infancy**

Under the common law, persons, whether male or female, are classified and referred to as infants until they attain the age of twenty-one years.

**2. Infants § 2— contractual liability — disaffirmance of contract**

An infant's contract, unless for "necessaries" or unless authorized by statute, is voidable by the infant, at his election, and may be disaffirmed during infancy or upon attaining the age of twenty-one.

**3. Infants § 2— contractual liabilities — concept of "necessaries"**

The concept of "necessaries" of an infant is enlarged to include such articles of property and such services as are reasonably necessary to enable the infant to earn the money required to provide the necessities of life for himself and those who are legally dependent upon him, a minor being liable for the reasonable value of such property or services.

**4. Infants § 2— contract for services of employment agency — necessaries — sufficiency of evidence — issues for jury**

In this action by an employment agency to recover upon an infant's contract for services rendered in assisting the infant to find employment as a draftsman, plaintiff's evidence tending to show that defendant, when he contracted with plaintiff, was nineteen years of age, emancipated, married, a high school graduate, within a quarter or 22 hours of obtaining his

279

degree in applied science, that defendant and his wife were expecting a child, and that defendant had to quit school and go to work and was capable of holding a job at a starting annual salary of $4,784, *is held* sufficient for submission to the jury for its determination of issues as to whether defendant's contract with plaintiff was an appropriate and reasonable means for defendant to obtain suitable employment, and if the jury should find that it was, the reasonable value of the services received by defendant pursuant to the contract.

LAKE, J., dissenting.

HUSKINS, J., dissenting.

BRANCH, J., joins in dissenting opinion of HUSKINS, J.

ON writ of *certiorari* to review the decision of the Court of Appeals reported in 5 N.C. App. 219, which affirmed the judgment of nonsuit entered by *Mason, J.,* at the close of plaintiff's evidence, in the District Court of GASTON County, docketed and argued as No. 36 at Fall Term 1969.

Plaintiff, in support of its allegations, offered evidence tending to show the facts narrated below.

Defendant had graduated from high school in 1966. On May 29, 1968, he was nineteen years old, emancipated and married. He needed only "one quarter or 22 hours" for completion of the courses required at Gaston Tech for an A.S. degree in civil engineering. His wife was employed as a computer programmer at First Federal Savings and Loan. He and she were living in a rented apartment. They were expecting a baby in September. Defendant had to quit school and go to work.

For assistance in obtaining suitable employment, defendant went to the office of plaintiff, an employment agency, on May 29, 1968. After talking with Maurine Finley, a personnel counselor, defendant signed a contract containing, *inter alia,* the following: "IF I ACCEPT employment offered me by an employer as a result of a lead (verbal or otherwise) from you within twelve (12) months of such lead even though it may not be the position originally discussed with you, I will be obligated to pay you as per the terms of the contract." Under the contract, defendant was free to continue his own quest for employment. He was to become obligated to plaintiff only if he accepted employment from an employer to whom he was referred by plaintiff.

After making several telephone calls to employers who might need defendant's services as a draftsman, Mrs. Finley called Spratt-

Seaver, Inc., in Charlotte, North Carolina. It was stipulated that defendant, as a result of his conversation with Mrs. Finley, went to Charlotte, was interviewed by Spratt-Seaver, Inc., and was employed by that company on June 6, 1968, at an annual salary of $4,784.00. The contract provided that defendant would pay plaintiff a service charge of $295.00 if the starting annual salary of accepted employment was as much as $4,680.00.

Prior to his contract with plaintiff, defendant had unsuccessfully sought employment with two other companies.

Plaintiff sued to recover a service charge of $295.00. In his answer, defendant admitted he had paid nothing to plaintiff; alleged he was not indebted to plaintiff in any amount; and, as a further answer and defense, pleaded his infancy.

The sole question presented is whether plaintiff offered evidence sufficient to withstand defendant's motion for nonsuit.

*Joseph B. Roberts, III, for plaintiff appellant.*

*T. Lamar Robinson, Jr., and Henry M. Whitesides for defendant appellee.*

BOBBITT, C.J.

[1] Under the common law, persons, whether male or female, are classified and referred to as *infants* until they attain the age of twenty-one years. 42 Am. Jur. 2d, Infants § 3; 43 C.J.S., Infants § 2.

"By the fifteenth century it seems to have been well settled that an infant's bargain was in general void at his election (that is voidable), and also that he was liable for necessaries." 2 Williston, Contracts § 223 (3rd ed. 1959).

An early commentary on the common law, after the general statement that contracts made by persons (infants) before attaining the age of twenty-one "may be avoided," sets forth "some exceptions out of this generality," to wit: *"An infant may bind himselfe to pay for his necessary meat, drinke, apparell, necessary physicke, and such other necessaries,* and likewise for his good teaching or instruction, whereby he may profit himselfe afterwards." (Our italics.) Coke on Littleton, 13th ed. (1788), p. 172. The italicized portion of this excerpt from Coke on Littleton was quoted by Pearson, J. (later C.J.), in *Freeman v. Bridger,* 49 N.C. 1 (1856). It appears also in later decisions of this Court: *Turner v. Gaither,* 83 N.C. 357

(1880); *Cole v. Wagner,* 197 N.C. 692, 150 S.E. 339 (1929); *Barger v. Finance Corp.,* 221 N.C. 64, 18 S.E. 2d 826 (1942). If the infant married, "necessaries" included necessary food and clothing for his wife and child. *Freeman v. Bridger, supra.*

**[2]**   In accordance with this ancient rule of the common law, this Court has held an infant's contract, unless for "necessaries" or unless authorized by statute, is voidable by the infant, at his election, and may be disaffirmed during infancy or upon attaining the age of twenty-one. *Chandler v. Jones,* 172 N.C. 569, 90 S.E. 580 (1916), and cases cited; *Barger v. Finance Corp., supra,* and cases cited; *Fisher v. Motor Co.,* 249 N.C. 617, 107 S.E. 2d 94 (1959).

In *Freeman v. Bridger, supra,* the opinion, referring to "such other necessaries," states: "These last words embrace boarding; for shelter is as necessary as food and clothing. They have also been extended so as to embrace schooling, and nursing (as well as physic) while sick. In regard to the quality of the clothes and the kind of food, &c., a restriction is added, that it must appear that the articles were suitable to the infant's degree and estate."

In *Freeman,* the Court held that timber for the construction of a house on an infant's land was not a "necessary" and therefore the infant could disaffirm his contract for the purchase thereof.

In *Turner,* the Court held that money for a professional (medical) education was not a "necessary" and therefore the infant could disaffirm his contract to repay money he had borrowed and used for that purpose. In this connection it is noted: (1) In the excerpt from Coke on Littleton, it is stated that "necessaries" for which "an infant may bind himselfe" included "good teaching or instruction, whereby he may profit himselfe afterwards." (2) The 1969 statute, now codified as G.S. 116-174.1, authorizes all minors in North Carolina of the age of seventeen years and upwards to enter into written contracts of indebtedness and to execute unsecured notes evidencing such indebtedness "(f)or the sole purpose of borrowing money to obtain post-secondary education at an accredited college, university, junior college, community college, technical institute, industrial education center, business or trade school provided, however, that none of the proceeds of such loans shall be used to pay for any correspondence courses."

In *Skinner v. Maxwell,* 66 N.C. 45 (1872), it was held that an infant, who had purchased a stock of goods for use in carrying on a mercantile business, had the right to disaffirm his contractual obligations with reference thereto. The thrust of this decision was to

preserve fully the infant's common-law right to disaffirm contracts involving business transactions. Accord: *McCormick v. Crotts,* 198 N.C. 664, 153 S.E. 152. In *McCormick,* it was held that the defendant, a minor, who had purchased "One Superior Machine complete and Snaplite Lens" for use in the Garden Theatre at Biscoe, N. C., was entitled (1) to disaffirm all his contractual obligations with reference to payment of the purchase price, and (2) to recover all amounts he had previously paid to the plaintiff. The plaintiff was adjudged entitled to the possession of the machine in its used and depreciated condition.

In *Jordan v. Coffield,* 70 N.C. 110 (1874), the plaintiff recovered for articles sold an infant "just before her marriage, consisting of her bridal outfit, and among other things a suite of chamber furniture costing $55; all of which articles were received and used by defendants, and still are in their service and use, except such of the same as are worn out." Settle, J., for the Court, said: "There is an exception to the general rule that an infant is incapable of binding himself by a contract made, not in favor of tradesmen, but for the benefit of the infant himself, in order that he may obtain necessaries on credit. As is well said in *Hyman v. Cain,* 48 N.C. 111, 'infants had better be held liable to pay for necessary food, clothing, etc., than for the want of credit, to be left to starve.' Nor are we to understand by the word necessaries only such articles as are absolutely necessary to support life, but it includes also such articles as are suitable to the state, station and degree in life of the person to whom they are furnished." The thrust of this decision is to expand slightly the concept of "necessaries" and to enable some infants to contract for somewhat more than the bare or minimum necessities of life.

When an infant purchased a motor vehicle, whether for pleasure or as necessary for use in his occupation or employment, the ancient rule of the common law was applied with full vigor. *Morris Plan Co. v. Palmer,* 185 N.C. 109, 116 S.E. 261 (1923); *Collins v. Norfleet-Baggs,* 197 N.C. 659, 150 S.E. 177 (1929); *Barger v. Finance Corp., supra; Fisher v. Motor Co., supra.*

In *Morris Plan Co.,* the defendant purchased a truck and by using it (hauling lumber) made a substantial amount of money. Later, the finance company repossessed and sold the truck. When he purchased the truck and executed a note and chattel mortgage for the purchase price, the defendant was emancipated, married, had the appearance "of a man of full age" and represented falsely that he was over twenty-one. Notwithstanding, the defendant was per-

mitted to disaffirm his contractual obligations and to recover the full amount of the payments he had made to the automobile dealer and to the finance company.

In *Collins,* the plaintiff, a minor, traded a Chevrolet truck for a Dodge sport roadster and gave the defendant a note and mortgage on the Dodge for the balance of the purchase price. The Dodge was destroyed in a wreck. The plaintiff elected to disaffirm his contract. In an action in his behalf by his general guardian, the plaintiff was permitted to recover from the defendant the fair market value of the Chevrolet truck and in addition the amount he had paid on the balance purchase price note.

In *Barger,* the plaintiff, when a minor, bought a Graham-Paige car and paid a portion ($38.45) of the purchase price therefor. He traded this car for a Nash and agreed to pay a difference of $257.00. The papers evidencing this additional obligation were purchased by a finance company. The plaintiff paid $116.50 and then defaulted. The finance company repossessed the Nash. When he became twenty-one, the plaintiff disaffirmed these contractual obligations and was permitted to recover from the dealer and the finance company, respectively, the sum he had paid to each of them. The opinion concludes: "The evidence in the instant case tends to show that the ownership of an automobile was advantageous to the plaintiff and that he would not have been promoted without an automobile available for his use. Nevertheless it does not appear that an automobile was necessary for him to earn a livelihood. Hence we are of opinion and hold that an automobile is not among those necessaries for which a minor may be held liable."

In *Fisher,* the plaintiff, a minor, bought a 1953 Oldsmobile. The purchase price was $750.00, of which $600.00 was provided by the plaintiff. This car, while operated by the plaintiff, was involved in a wreck. Its value, after the wreck, was $50.00. The plaintiff elected to disaffirm his contract. In an action instituted in his behalf by a next friend, the plaintiff recovered $550.00 (the $600.00 he had paid less the value of the wrecked car).

The basis of decision in the cases considered in the four preceding paragraphs is stated by Stacy, C.J., in *McCormick v. Crotts, supra,* as follows: "The case may seem to be a hard one, as the plaintiff was not aware of the defendant's minority at the time of the sale . . . but the dominant purpose of the law in permitting infants to disaffirm their contracts is to protect children and those of tender years from their own improvidence, or want of discretion, and from the wiles of designing men."

Decisions in other jurisdictions which hold that a motor vehicle, under particular circumstances, may be a "necessary" for a minor, are reviewed in an article, *Infant Contractual Responsibility: A Time for Reappraisal and Realistic Adjustment?* Mehler, 11 University of Kansas Law Review 361, at 370 *et seq.* (1963).

In addition to G.S. 116-174.1, discussed above, modifications of the common-law rule by our General Assembly include those set forth below.

1. G.S. 20-309.1, a codification of Chapter 934, Session Laws of 1967, provides that "(a)ny minor 18 years of age or over shall be competent to contract for automobile insurance of any kind, to enter into an agreement to finance such insurance, to execute a power of attorney in connection with such financing, and also to execute a power of attorney in connection with an application for insurance with the assigned risk plan, to the same extent and with the same effect as though he had attained the age of 21 years." Thus, if *Barger v. Finance Corp., supra,* and similar decisions, are followed, an infant eighteen years of age or over can elect to avoid his contract for the purchase of a car and recover any amounts previously paid as purchase price but is bound absolutely on his contract for automobile insurance and the financing thereof.

2. G.S. 53-43.5 authorizes banks to deal with minors, in respect of deposit accounts and the rental of safe deposit boxes, as if they were twenty-one. With reference to bank deposits, see also G.S. 53-53.

3. G.S. 54-18 authorizes minors of the age of twelve years and upwards to become shareholders in building and loan associations and federal savings and loan associations and to deal with reference thereto as if they were twenty-one.

4. G.S. 58-205.1 authorizes minors of the age of fifteen years and upwards to make contracts of insurance or annuity with any life insurance company authorized to do business in this State as if they were twenty-one.

5. G.S. 39-13.2, in the circumstances to which it applies, authorizes married minors to execute contracts, conveyances or mortgages relating to real or personal property as if they were married persons of the age of twenty-one or older.

6. Article 2, Chapter 165, of the General Statutes, entitled "The Minor Veterans Enabling Act," confers upon veterans "eighteen years of age or over, but under twenty-one years of age," the authority to enter into contracts for the purposes of obtaining rights

and benefits under the Service Men's Readjustment Act as if such minors were twenty-one years of age or older.

In addition to the foregoing, it is noteworthy: (1) All unmarried persons of eighteen years, or older, unless otherwise disqualified by statute, may lawfully marry. G.S. 51-2. (2) Persons of eighteen years, or older, are eligible for employment in the (hazardous) occupations in which minors under sixteen (G.S. 110-6) and minors under eighteen (G.S. 110-7) are not "permitted or allowed to work."

With reference to statutory modifications of the common-law rule in other States, see 41 Indiana Law Journal 140, at 149 *et seq.* (1965); V Vernier, American Family Laws, Section 273.

It is noted that, under "The Family Law Reform Act 1969" (1969, c. 46, Part I), applicable to England and Wales, a person attains full age "on attaining the age of eighteen instead of attaining the age of twenty-one." Halsbury's Statutes of England, Third Edition, Interim Service re 1969 Statutes.

This statement commands respect and approval: "Society has a moral obligation to protect the interests of infants from overreaching adults. But this protection must not become a straightjacket, stifling the economic and social advancement of infants who have the need and maturity to contract. Nor should infants be allowed to turn that protective legal shield into a weapon to wield against fair-dealing adults. It is in the interest of society to have its members contribute actively to the general economic and social welfare, if this can be accomplished consistently with the protection of those persons unable to protect themselves in the market place." Comment, *Infants' Contractual Disabilities: Do Modern Sociological and Economic Trends Demand a Change in the Law?* 41 Indiana Law Journal 140 *et seq.* (1965). Also, see Comment, *The Status of Infancy as a Defense to Contracts,* 34 Virginia Law Review 829, at 831 (1948), and Comment, *Contracts — Capacity of the Older Minor,* 30 University of Kansas City Law Review 230 *et seq.* (1962).

Admittedly, the decisions of the District Court and of the Court of Appeals rest squarely on the ancient rule of the common law as applied in prior decisions of this Court. However, without awaiting additional statutory changes, whether general or piecemeal, it seems appropriate that this common-law rule, which is rooted in decisions made by judges centuries ago, should be modified at least to the extent set forth below.

In *State v. Culver,* 129 A. 2d 715 (1957), Vanderbilt, C.J., in accord with cited quotations from impressive legal authorities, in-

cluding Coke's Fourth Institute, Professor Williston, Dean Pound, Mr. Justice Holmes and Mr. Justice Cardozo, said: "One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice."

[3]     In general, our prior decisions are to the effect that the "necessaries" of an infant, his wife and child, include only such necessities of life as food, clothing, shelter, medical attention, etc. In our view, the concept of "necessaries" should be enlarged to include such articles of property and such services as are reasonably necessary to enable the infant to earn the money required to provide the necessities of life for himself and those who are legally dependent upon him.

·     The record before us contains only plaintiff's evidence and the stipulation. It may be that defendant can defeat plaintiff's claim on grounds other than the plea of infancy. His motion for nonsuit having been allowed, defendant has not offered evidence.

[4]     The evidence before us tends to show that defendant, when he contracted with plaintiff, was nineteen years of age, emancipated, married, a high school graduate, within "a quarter or 22 hours" of obtaining his degree in applied science, and capable of holding a job at a starting annual salary of $4,784.00. To hold, as a matter of law, that such a person cannot obligate himself to pay for services rendered him in obtaining employment suitable to his ability, education and specialized training, enabling him to provide the necessities of life for himself, his wife and his expected child, would place him and others similarly situated under a serious economic handicap.

[3]     In the effort to protect "older minors" from improvident or unfair contracts, the law should not deny to them the opportunity and right to obligate themselves for articles of property or services which are reasonably necessary to enable them to provide for the proper support of themselves and their dependents. The minor should be held liable for the reasonable value of articles of property or services received pursuant to such contract.

**[4]** Applying the foregoing legal principles, which modify *pro tanto* the ancient rule of the common law, we hold that the evidence offered by plaintiff was sufficient for submission to the jury for its determination of issues substantially as indicated below.

To establish liability, plaintiff must satisfy the jury by the greater weight of the evidence that defendant's contract with plaintiff was an appropriate and reasonable means for defendant to obtain suitable employment. If this issue is answered in plaintiff's favor, plaintiff must then establish by the greater weight of the evidence the reasonable value of the services received by defendant pursuant to the contract. Thus, plaintiff's recovery, if any, cannot exceed the reasonable value of its services to defendant.

Accordingly, the judgment of the Court of Appeals is reversed and the cause is remanded to that Court with direction to award a new trial to be conducted in accordance with the legal principles stated herein.

Error and remanded.

LAKE, J., dissenting:

The defendant, a young man nineteen years old, with better than average education, has benefited from his use of the plaintiff's services for which he promised to pay an agreed amount. Now, having received the full benefit he desired, he refuses to pay for it. He does not contend, and there is nothing in the record before us to suggest, that the plaintiff overcharged him, or otherwise took any advantage of him. Nothing in this record arouses sympathy for the defendant. This is one of those hard cases which so frequently have turned out to be "quicksands of the law." In my view, the majority, in its proper desire to avoid an injustice to this plaintiff, has taken a step into quicksand.

As the majority opinion shows clearly, since a time prior to Columbus' discovery of America, it has been the well settled rule of the common law, repeatedly stated by this Court, that an infant's contract may be disaffirmed by him without liability, unless it is a contract for what the law calls "necessaries." If the contract is one for necessaries, the infant is liable for the reasonable value of what he received.

The reason for this rule, in both its aspects, is the desire of the law to protect the infant. His liability to pay for necessaries is not imposed so as to protect an adult supplier against a shrewdly scheming infant. It is imposed solely because otherwise the infant,

honest or not, might be unable to acquire that which he must have for the support of himself and his dependents. The rule permits the infant to refuse to carry out other contracts irrespective of the particular infant's intelligence, education or experience in business. It does not depend upon whether the particular contract was fair or unfair. It is immaterial, under this rule, that the application of it results in a loss to an adult who dealt in good faith with an unscrupulous infant.

For five hundred years English and American societies and economies have thrived under this rule and infants have found employment. It may well be that a better rule can be devised. I find nothing in this record, or in current social and economic conditions, to support the conclusion that either our society or our economy would suffer substantially if we adhere to the rule for one more year. Then the General Assembly of 1971 will be in session and can make such changes as may be necessary.

Stripped of emotional aspects, this case presents but one question, assuming the rule heretofore established is to be followed: Is an infant's contract for the services of an employment agency, under the circumstances disclosed in this record, a contract for necessaries? I do not think it is. That is, infants will not be seriously threatened with denial of employment if we hold they may disaffirm their contracts with employment agencies.

In the five hundred year life of this rule it has become well settled that whether goods or services are a necessary depends upon the facts in each case. What may be a necessary for one infant may not be for another differently situated. What was a necessary in 1770 may not be so in 1970, and vice versa. It is, however, equally well settled that a "necessary" is something more urgently needed than a thing or a service which is merely a convenience or an assistance to the infant. This is the established rule both in America and England, apart from statute.

In Williston on Contracts, 3rd ed., § 241, it is said:

> "Necessaries are limited by the courts as closely as possible, and generally come under the heads of food, or clothing of a reasonable kind, purchased for the use of the infant or of his family."

In Pollock's Principles of Contracts, pp. 49-50, it is said:

> "It is obvious, however, that it is in truth a question of common sense and experience what is or is not reasonably required by a person in a given station and circumstances, and one on

which not much light can be thrown by the statement in a general form of rules founded on extreme cases. *It is to be borne in mind * * * that the question is not whether the things are such that a person of the defendant's means may reasonably buy and pay for them, but whether they can reasonably be said to be so necessary for him that, though an infant, he must obtain them on credit rather than go without.* For the purpose of deciding this question the Court will take judicial notice of the ordinary customs and usages of society.  ·

"If, on these preliminary considerations, the Court decides that there is evidence on which the supplies in question may reasonably be treated as necessaries, then it is for the jury to say whether they were in fact necessaries for the defendant under all the circumstances of the case." (Emphasis added.)

These principles are reflected in the former decisions of this Court cited in the majority opinion.

That the services of the employment agency in giving this defendant names of prospective employers was a convenience and an aid to him in getting a job with a minimum of inquiry and search from door to door is no doubt true. In the present eagerness of industry to find trained engineers, I cannot agree that such services are a "necessary" for an engineering student nearing graduation from Gaston Tech and seeking employment in the Charlotte area.

The majority opinion says: "Admittedly, the decisions of the District Court and of the Court of Appeals rest squarely on the ancient rule of the common law as applied in prior decisions of this Court."

After reciting several instances in which the Legislature of this State has modified the common law rule, the majority, "without awaiting additional statutory changes, whether general or piecemeal," now changes the law upon which the decisions of the lower courts "rest squarely." In justification, the majority opinion quotes former Chief Justice Vanderbilt of the Supreme Court of New Jersey as saying: "The nature of the common law requires that *each time* a rule of law is applied it be carefully scrutinized to make sure *that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice.*" (Emphasis added.)

This is not my conception of the nature of the common law, nor is it my understanding of the authority conferred upon this Court by the people of North Carolina. The authority of the people,

through their representatives in the State Government, to change the common law when conditions and needs have so changed as to render the law unjust or unwise is clear. They have, however, seen fit to vest this authority in the Legislature and not in us. N. C. Constitution, Art. I, § 8; Art. II, § 1. This power to change established law to meet changes in conditions is the essence of the legislative power.

The tragic turmoil in our public schools had its beginning in the decision of another court to assume the power to change the law of the land to conform to its conception of justice in a new time. No such social upheaval will result from the decision of the majority in this case, of course, but it is the same kind of error. It weakens, however so slightly, the wall of separation which the people of this State built between the proper functions of the several divisions of their government. The majority opinion, itself, shows this step is unnecessary for it cites at least six instances in which the Legislature has acted in recent years to make changes in this small field of the law. I am not persuaded that there is such an urgent necessity for the change now made by this decision that it cannot safely wait another year. The majority opinion shows that in England the change felt desirable there was made by Act of Parliament.

If some change is necessary, the majority opinion gives the trial courts no standard to guide them in other cases. The majority opinion expressly approves this statement from 41 Indiana Law Journal 140: "But this protection must not become a straightjacket stifling the economic and social advancement of infants who have the need and maturity to contract." How are the trial judges tomorrow to distinguish between the infant who does and the infant who does not have "maturity"? What is the test of an infant's "need" to contract? Again, the majority opinion says the previously accepted concept of "necessaries" should be enlarged to include "articles" and "services" which are "reasonably necessary" to enable the contracting infant to earn money to provide necessities of life for himself and his dependents. Are the services of an employment agency more necessary for this purpose than is an automobile for use in going from home to work? Is a nineteen year old, who has almost finished an engineering course, more in need of such an automobile than a seventeen year old drop-out from high school?

I am unable to find in current events overwhelming evidence that today's nineteen year olds have more maturity of judgment than did those of a century ago and so have less need of protection. The present defendant, an exceptionally well educated one, has evaluated

his economic credit and reputation for integrity in business transactions at something less than $295. In this I find little evidence of maturity of judgment.

HUSKINS, J., dissenting:

I respectfully dissent from the majority opinion which enlarges the concept of "necessaries" to include "such articles of property and such services as are reasonably necessary to enable the infant to earn the money required to provide the necessities of life for himself and those who are legally dependent upon him." To this end the ancient rule of the common law is modified *pro tanto*.

Inferentially, this modification of the common law rule applies only to "older minors," although what age group this embraces is not clear. Presumably, the jury in each case must now determine what articles of property and what services an infant may obtain by enforceable contract. Thus with respect to contracts with minors, it now becomes impossible for the legal profession to advise clients with any degree of certainty. What is a "necessary" in any given case is largely unknown until the jury speaks. Furthermore, what factual situation a trial judge should nonsuit at the close of the evidence and what he should submit to the jury under appropriate instructions becomes a judicial game of chance. It would be better, in my opinion, simply to apply long established legal principles and leave this area of the law undisturbed. Accordingly, I vote to affirm the decision of the Court of Appeals sustaining the judgment of nonsuit in the court below.

BRANCH, J., joins with this dissent.