NATIONWIDE MUTUAL INSURANCE COMPANY v. ANDREW CURRIE CHANTOS

No. 10

(Filed 11 November 1977)

1. **Insurance § 112— liability coverage pursuant to statute—reimbursement under policy not required**

    Plaintiff insurer's contention that since it was required by statute to provide automobile liability coverage for defendant, a stranger to the insurance contract who was in lawful possession of the insured automobile, it is entitled to reimbursement from defendant in accordance with the reimbursement provisions of the insureds' policy and by reason of G.S. 20-279.21(h) is without merit, since that statute does not compel reimbursement by the insured but merely allows the insurer and the insured to enter into such an agreement; therefore, the policy provision in question is merely a contractual agreement .between the parties to the policy and does not have the effect or force of a statute of which defendant could be charged with constructive knowledge.

2. **Insurance § 112— reimbursement of insurer—negligent driver's demand for coverage under policy**

    Since the mandatory coverage required by the Financial Responsibility Act does not require an insurer to extend medical payment coverage beyond the terms of the policy to one who receives liability coverage solely by virtue of the Act, the filing of a claim by defendant under the medical payment clause of the policy in question did not amount to seeking protection under the mandatory liability provisions of the policy; nor was a contractual relationship created between insurer and defendant because of defendant's failure to reply

to insurer's letters about settlement of the claim, since silence generally does not result in the formation of a contract between primary parties. G.S. 20-279.21(b)(2).

**3. Insurance § 112— liability coverage pursuant to statute—reimbursement of insurer proper**

An automobile liability insurer may have reimbursement from a stranger to the insurance contract whose negligence caused the injuries and damages for which the insurer has paid as a result of liability imposed by statute.

**4. Insurance § 112— reimbursement of insurer—negligent driver's demand for coverage under the policy—instruction erroneous**

In an action by insurer for reimbursement from a stranger to the insurance contract whose negligence caused the injuries and damages for which the insurer paid as a result of liability imposed by statute, the trial court erred by instructing the jury that in order for plaintiff insurer to invoke the reimbursement provisions of the policy, plaintiff had the burden of proving by the greater weight of the evidence that defendant sought coverage and protection under the policy, since contracts implied in law require no expression of assent or agreement by the parties.

**5. Infants § 2— reimbursement of insurer—statutory obligation—infancy of negligent driver—no relief from liability**

In an action by insurer for reimbursement from a stranger to the insurance contract whose negligence caused the injuries and damages for which the insurer paid as a result of liability imposed by statute, the trial court erred by instructing the jury that plaintiff insurer had the burden of proving that defendant had accepted benefits and thereafter failed to repudiate them within a reasonable time after reaching his majority, since infancy did not relieve defendant of rights and liabilities imposed upon the parties by the Financial Responsibility Act, the language of that Act making it clear that the Legislature intended to make all financially irresponsible persons, including minors, subject to its provisions.

**6. Insurance § 112— reimbursement of insurer—liability of insurer not determined at settlement—settlement of claim proper**

Where plaintiff insurer sought reimbursement from defendant whose negligence caused the injuries and damages for which the insurer paid as a result of liability imposed by statute, defendant's contention that plaintiff had no right to settle with the injured person and seek reimbursement because at the time of settlement plaintiff was not under legal obligation to make settlement is without merit, since it was not incumbent upon plaintiff to wait until suit was filed or judgment entered before seeking to mitigate the absolute liabilities imposed upon it by statute.

**7. Insurance § 112— reimbursement of insurer—negligence of defendant—determination of both in one action proper**

In an action by insurer for reimbursement from a stranger whose alleged negligence caused the injuries and damages for which the insurer paid as a result of liability imposed by statute, the fact that defendant's negligence had

not yet been determined did not bar insurer from proving it at the same trial in which it made its claim for indemnity. G.S. 20-279.21(f).

APPEAL by plaintiff from *Bailey, J.*, 27 September 1976 Session of WAKE Superior Court. Defendant filed cross assignments of error pursuant to Rule 10(d) of the Rules of Appellate Procedure. We allowed plaintiff's petition for discretionary review prior to determination by the Court of Appeals on 15 April 1977.

This is the third time that this case has been tried. The first trial resulted in a summary judgment in favor of defendant. This judgment was reversed by the Court of Appeals. See 21 N.C. App. 129, 203 S.E. 2d 421. The second trial also resulted in a summary judgment for defendant which was again reversed by the Court of Appeals. 25 N.C. App. 482, 214 S.E. 2d 438. *Cert. denied,* 287 N.C. 465, 215 S.E. 2d 624.

Plaintiff instituted this action seeking reimbursement from defendant of the sum of $9,581.25 which plaintiff had paid to Charles Edward McDonald (McDonald) in settlement of personal injuries and property damages sustained by McDonald in a collision with an automobile insured by a policy of insurance issued by plaintiff to David Earl Williams and his wife Sallie Young Williams. In summary, plaintiff alleged that on 30 January 1971 Sallie Young Williams allowed her minor son David to use her 1965 Mustang automobile which was insured by the policy above referred to. David, in turn, gave defendant, who was then 16 years old, permission to use the car. Defendant, while in lawful possession of the Williams' car, negligently operated the automobile thereby causing a collision with an automobile operated by McDonald; that defendant's negligence was the proximate cause of serious personal injuries and substantial property damage suffered by McDonald. Nationwide thereafter notified defendant that it was reserving all rights and defenses under the provisions of the Williams' policy, but nonetheless under its reservations of rights and at the request of defendant proceeded in good faith to settle the McDonald claim against defendant for the sum of $9,581.25. As a result of this settlement, Nationwide obtained a release which forever discharged defendant Chantos from any further liability to McDonald. Plaintiff further alleged that at the time of said collision, defendant was in lawful possession of the insured automobile and therefore plaintiff was re-

quired by the terms of G.S. 20-279.21(b) to extend coverage to defendant solely because of the provisions of the statute; and that plaintiff was entitled to reimbursement from defendant pursuant to the provisions of G.S. 20-279.21(h) and the policy. Plaintiff thereupon prayed for recovery of the sum of $9,581.25 with interest from 5 April 1972.

By his answer defendant admitted that while he was in lawful possession of the insured vehicle, he was involved in an accident with McDonald as a result of which McDonald suffered personal injury and property damage; that plaintiff was legally obligated to afford coverage and protection to him. He denied the other substantive allegations of the complaint and by way of further defense alleged that on the date plaintiff settled with McDonald, defendant was a minor; that he had at no time entered into any contract or agreement with plaintiff and if plaintiff contended that any contract or agreement was entered into, he (defendant) repudiated it because of his minority at the time. He further alleged that he had not ratified but had disavowed any such contract since reaching majority. Defendant also alleged that he was not a party to the insurance policy issued by plaintiff to the Williams', therefore he was not liable to plaintiff in any amount.

Plaintiff replied and alleged that during both his minority· and majority, defendant accepted the benefits of the release obtained by plaintiff and thereby ratified the release so as to estop him from denying same.

In May, 1974, plaintiff filed an amendment to its complaint alleging that defendant sought coverage, protection and defense from Nationwide under the Williams' policy, and in the alternative that, if the jury should find that defendant did not seek such coverage and protection, defendant caused Nationwide to be led to understand that he was expecting such coverage and protection. It was further alleged that defendant was notified of plaintiff's attempt to negotiate settlement with McDonald while the negotiations were in progress. Defendant denied all the allegations in the amendment to plaintiff's complaint.

Plaintiff's evidence in essence tended to show that on 30 January 1971, defendant, who was then sixteen years of age, borrowed a car, insured by plaintiff, from one David Williams, also a

minor, who had been allowed to use the car by his mother, one of the named insureds in the policy. While driving the car, defendant crossed the center line on North Boulevard in Raleigh and collided with an automobile being driven by one Charles McDonald. Both defendant and McDonald suffered extensive injuries.

Thereafter, on 21 April 1971, plaintiff wrote to defendant informing him that a claim had been filed against him and, further, that it was plaintiff's understanding that defendant was expecting coverage under the policy issued to the named insureds. Plaintiff explained that its position in the case was that defendant was not in lawful possession of the car on 30 January, and he was, therefore, not entitled to coverage under the policy. Plaintiff did, however, reserve the right to defend, negotiate or settle the claim without actually obligating itself to do so. Defendant did not respond to this letter.

Plaintiff entered into negotiation with McDonald and at McDonald's urging settled the claim for property damage on 21 May 1971 in the amount of $581.25. On 15 June 1971, defendant, through his attorney, sent plaintiff medical bills incurred in the treatment of his injuries sustained in the accident. Plaintiff rejected these claims, contending that, under the circumstances, the policy did not cover them.

After reconsidering its position that defendant was not in lawful possession of the Williams' car, plaintiff notified defendant on 5 November 1971 that it was attempting to negotiate a settlement of McDonald's claim. A copy of this letter was sent to defendant's attorney. Neither defendant nor his attorney responded to this letter. On 5 April 1972, plaintiff paid McDonald an additional $9,000.00 in final settlement and received a release in favor of both plaintiff and defendant. Plaintiff did not contact defendant again until this action was filed in February of 1973.

The final pretrial order in the case before us contained, *inter alia*, the following stipulations:

2. It is stipulated that the defendant is now twenty-one years of age.

3. It is stipulated that all parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.

4. In addition to the other stipulations contained herein, the parties stipulate and agree to the following undisputed facts:

(a) That on the 30th day of January, 1971, the plaintiff had in force a policy of liability insurance on a certain 1965 Mustang automobile owned by David and Sally (sic) Williams, parents of David Williams, Exhibit "A" to the Complaint filed herein, being a true copy of such policy.

(b) On January 30, 1971, Mrs. Williams gave her son, David, permission to use the 1965 Mustang.

(c) Charles Edward McDonald did not file a claim nor institute a civil action against defendant, Andrew Currie Chantos for damages arising out of their accident of January 30, 1971.

(d) David Williams allowed the defendant to use the Mustang and put him in lawful possession thereof; Chantos did not have the permission to operate the Mustang from Mr. or Mrs. David Williams, owners of the Mustang and the parents of David Williams.

(e) On January 30, 1971, the defendant while traveling North on "Downtown Boulevard" in the City of Raleigh, in the northbound lane and while driving the Mustang automobile during a rainstorm, left the northbound lanes and crossed over into the southbound lanes, colliding with an automobile traveling South in the southbound lanes and being driven by Charles Edward McDonald.

(f) McDonald was injured in the collision.

(g) Nationwide proceeded to handle and settle with McDonald for the sum of $9,581.25 plus his property damages.

Issues were submitted to the jury and answered by the jury as follows:

1. Did the defendant, Andrew Currie Chantos, seek protection or coverage under Nationwide's policy of automobile insurance from Nationwide Mutual Insurance Company on or prior to Nationwide's settlement with Charles Edward McDonald on or about April 5, 1972?

ANSWER: YES

2. Did the defendant, Andrew Currie Chantos, accept the benefit of the settlement by Nationwide with McDonald and thereafter fail to repudiate or disaffirm that acceptance within a reasonable time after reaching the age of eighteen years?

ANSWER: NO

3. What amount, if any, is the plaintiff, Nationwide, entitled to recover of the defendant Andrew Currie Chantos?

ANSWER: _____

Plaintiff appealed from judgment entered in favor of defendant.

*Ragsdale, Liggett & Cheshire, by George R. Ragsdale, William J. Bruckel, Jr., and Robert R. Gardner, for plaintiff-appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay, by Ronald C. Dilthey, for defendant-appellee.*

BRANCH, Justice.

At the threshold of this case, we consider it proper to state that our denial of certiorari in the case of *Nationwide Mutual Insurance Company v. Chantos*, 25 N.C. App. 482, 214 S.E. 2d 438, *cert. denied*, 287 N.C. 465, 215 S.E. 2d 624, does not necessarily constitute approval of the reasoning or the merits of that decision. In the appeal now before us, we may consider any error which has occurred during the course of this litigation, provided the parties have taken proper steps to preserve the questions for appellate review. *Peaseley v. Coke Co.*, 282 N.C. 585, 194 S.E. 2d 133.

As between the insurer and the named insured, the validity of the reimbursement provision of the policy *sub judice* is not before us. However, we note, in passing, that this question has been decided in other jurisdictions. Although there is a conflict in other jurisdictions, the majority view appears to uphold such provisions as between an insurer and the named insured. See 29 A.L.R. 3d 291. We wish to make it clear that this decision is not to be construed as approving or disapproving the reimbursement

provisions of this policy as between insurer and the named insureds.

[1]  The posture of appellant is that since it was required by statute to provide liability coverage for defendant, it is entitled to reimbursement from defendant in accordance with the reimbursement provisions of the Williams' policy and by reason of the provisions of G.S. 20-279.21(h).

G.S. 20-279.21(h) provides:

Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this Article.

Pursuant to this authorization, appellant included in the Williams' policy the following:

Financial Responsibility Laws

When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

While the policy provision does comply with the statutory authorization, G.S. 20-279.21(h) does not *compel* reimbursement by the insured, it merely allows the insurer and the insured to enter into such an agreement. The policy provision is, then, merely a contractual agreement between the parties to the policy and does not have the effect or force of a statute of which we could charge defendant with constructive knowledge. See, Annot., 58 Am. Jur. 2d, *Notice* Section 21. It is a fundamental principle of contract law that parties to a contract may bind only themselves and that the parties to the contract may not bind a third person who is not a party to the contract in absence of his consent to be bound. 17A

C.J.S., *Contracts* Section 520, page 999. However, appellant contends that defendant sought protection under the policy by submitting a claim for medical expenses incurred in the treatment for injuries sustained by him in the accident and that defendant led appellant to believe that he was relying on it for protection because he failed to respond to its letters of 21 April 1971 and 5 November 1971. We reject these contentions.

[2] The mandatory coverage required by the Financial Responsibility Act is solely for the protection of innocent victims who may be injured by financially irresponsible motorists. It does not require the insurer to extend medical payment coverage beyond the terms of the policy to one who receives liability coverage solely by virtue of the Act. G.S. 20-279.21(b)(2). Thus the filing of a claim by defendant under the medical payment clause of the policy did not amount to seeking protection under the mandatory liability provisions of the policy. Neither was a contractual relationship created between the parties to this action because of defendant's failure to reply to appellant's letters. Except in unusual circumstances, silence will not result in the formation of a contract between primary parties. Calamari, Contracts, Section 31. Certainly this rule would not operate to bind a third party who is without any knowledge of the provisions of the contract.

Appellant's letter of 21 April 1971 reserved certain rights but made no mention of any right to reimbursement. The letter of 5 November 1971 informed defendant that appellant was attempting to negotiate a settlement with McDonald. Plaintiff's inaction and silence, under these circumstances, could not bind him to a contract provision of which he had no knowledge.

[3] We, therefore, hold that plaintiff cannot rely upon the reimbursement clauses contained in the Williams' policy to support its action. By so holding, we do not decide that there is no theory upon which appellant could recover. We are therefore faced with the troublesome question of whether an insurer may have reimbursement from a stranger to the insurance contract whose negligence caused the injuries and damages for which the insurer had paid as a result of liability imposed by statute. We are unable to find a case in which any court has considered this question. We must, therefore, look to the applicable statutes and relevant holdings of our courts for guidance.

G.S. 20-279.21(b), in part provides:

Such owner's policy of liability insurance:

(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, or any other persons in lawful possession, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle, or motor vehicles. . . .

Also pertinent to our decision is G.S. 20-279.21(f) which reads as follows:

(1) Except as hereinafter provided, and with respect to policies of motor vehicle liability insurance written under the North Carolina assigned risk plan, the liability of the insurance carrier with respect to the insurance required by this Article shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; . . .

In interpreting statutes, our task is to seek and apply the legislative intent. *Housing Authority v. Farabee*, 284 N.C. 242, 200 S.E. 2d 12. The Court will not adopt an interpretation which results in injustice when the statute may reasonably be otherwise consistently construed with the intent of the act. *Puckett v. Sellars*, 235 N.C. 264, 69 S.E. 2d 497. Obviously, the Court will, whenever possible, interpret a statute so as to avoid absurd consequences. *State v. Spencer*, 276 N.C. 535, 173 S.E. 2d 765.

Under the Financial Responsibility Act, all insurance policies covering loss from liability growing out of the ownership, maintenance and use of an automobile are mandatory to the extent coverage is required by G.S. 20-279.21. The primary purpose of this compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by financially irresponsible motorists. The victim's rights against the insurer are not derived through the insured, as in the case of voluntary insurance. Such rights are statutory and become absolute upon the occurrence of injury or damage inflicted by the named insured, by one driving with his permission, or by one driving while in lawful possession of the named insured's car, regardless of whether or

not the nature or circumstances of the injury are covered by the contractual terms of the policy. The provisions of the Financial Responsibility Act are "written" into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail. *Insurance Co. v. Casualty Co.*, 283 N.C. 87, 194 S.E. 2d 834; *Strickland v. Hughes, supra; Jones v. Insurance Co.*, 270 N.C. 454, 155 S.E. 2d 118; *Insurance Co. v. Roberts*, 261 N.C. 285, 134 S.E. 2d 654.

In this action it is alleged and admitted in the pleadings and stipulated by the parties that, at the time of the collision between the automobile operated by defendant Chantos and the automobile operated by McDonald, defendant was in *lawful possession* of the automobile insured by the policy issued by appellant to Mr. and Mrs. Williams. Thus, while defendant was not an "insured" under the contractual terms of the policy, he was made an "insured" for the protection of the public by virtue of G.S. 20-279.21(b)(2). McDonald's right to recover against appellant became absolute upon the occurrence of the accident which caused injury and damage to him. *Insurance Co. v. Casualty Co., supra.*

Appellant's liability to McDonald did not arise out of any actionable negligence on its part but by operation of law. While the Financial Responsibility Act does impose liability upon an insurer as a matter of public policy, it is obvious that, but for the actions of defendant, McDonald would have had no claim or cause of action against appellant. Thus, liability has been imposed upon appellant in much the same manner that public policy imposes liability upon an employer for the tortious conduct of his employee under the doctrine of *respondeat superior.* See, Prosser, Torts, Section 68. See also, Lee, North Carolina Law of Agency and Partnership, Section 21. The same theory which permits an employer to be indemnified against a negligent employee should permit Nationwide to seek recovery from defendant Chantos.

It has long been established that where liability has been imposed upon an employer because of the negligence of his employee and he incurs such liability solely under the doctrine of *respondeat superior*, the employer, having discharged the liability, may recover full indemnity from the employee. *Ingram v. Insurance Co.*, 258 N.C. 632, 129 S.E. 2d 222. *See also, Gadsden v.*

*Crafts & Co.*, 175 N.C. 358, 95 S.E. 610; *Smith v. Railroad*, 151 N.C. 479, 66 S.E. 435. This rule of indemnity has also been applied to joint tort-feasors. The general rule of common law is that there is no right of indemnity between joint tort-feasors. *Bowman v. Greensboro*, 190 N.C. 611, 130 S.E. 502. This rule is modified by the doctrine that a party secondarily liable is entitled to indemnity from the party primarily liable even when both parties are denominated joint tort-feasors. For example, when the active negligence of one tort-feasor and the passive negligence of another combine to proximately cause injury to a third party, the passively negligent tort-feasor who is compelled to pay damages to the injured party is entitled to indemnity from the actively negligent tort-feasor. *Hunsucker v. Chair Co.*, 237 N.C. 559, 75 S.E. 2d 768; *Bowman v. Greensboro, supra.* The theory underlying the right of one who is passively liable to recover against one who is primarily liable is succinctly stated in the Restatement of Restitution, Section 76:

> A person who, in whole or in part, has discharged a duty which is owed by him, but, which as between himself and another, should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his act.

The theory of indemnity applied in the cases discussed above is applicable to instant case.

Assuming that Chantos' negligence proximately caused the damages and injuries to McDonald, he became the actual wrongdoer and was primarily liable. Nationwide's statutory liability was passive and secondary. Nationwide discharged its statutory duty and is, therefore, entitled to seek reimbursement. We do not believe that the Legislature intended to enact a statutory scheme which would permit a wrongdoer to gratuitously reap the benefits of an insurance policy without being liable to indemnify the insurer who became liable solely by virtue of that statute. To so hold would be to reach a highly inequitable and foolish result. When such a void appears in the law, it should, when possible, be bridged by equity.

We hold that the pleadings and evidence in instant case are sufficient to permit the trial judge to submit the case to the jury on the theory of a contract of indemnity implied in law.

[4] We now turn to appellant's contention that the trial judge erred by instructing the jury that in order for plaintiff to invoke the reimbursement provisions of the policy, Nationwide had the burden of proving by the greater weight of the evidence that Chantos sought coverage and protection under the policy.

Unlike conventional contracts or contracts implied in fact, contracts implied in law require no expression of assent or agreement by the parties. In Volume 1, Section 19, at page 46, of Corbin on Contracts, we find the following statement:

> A quasi contractual obligation is one that is *created by the law* for reasons of justice, *without any expression of assent* and sometimes even against a clear expression of dissent. If this is true, it would be better not to use the word "contract" at all. Contracts are formed by expressions of assent; quasi contracts quite otherwise. The legal relations between contractors are dependent upon the interpretation of their expressions of assent; in quasi contract the relations of the parties are not dependent on such interpretation. (Emphasis ours.)

After the rights and liabilities of Nationwide and Chantos were fixed by statute and operation of law, Nationwide's right to reimbursement from Chantos was not dependent upon any action on the part of defendant Chantos. The challenged instruction was therefore erroneous and might well have led the jury to believe that the rights of the parties depended upon the formation of a conventional contract based upon assent of the parties.

[5] In view of the foregoing analysis, it is obvious that we must also sustain appellant's assignment of error to the effect that the trial judge erred by instructing the jury that appellant also had the burden of proving that defendant had accepted benefits and thereafter failed to repudiate them within a reasonable time after reaching his majority. Again, this instruction sounds in the theory of conventional contracts.

It is well settled that the conventional contracts of an infant, except those for necessities and those authorized by statute, are voidable at the election of the infant and may be disaffirmed by the infant during minority or within a reasonable time after reaching majority. *Personnel Corp. v. Rogers*, 276 N.C. 279, 172 S.E. 2d 19; *Fisher v. Motor Co.*, 249 N.C. 617, 107 S.E. 2d 94; *Col-*

*lins v. Norfleet-Baggs*, 197 N.C. 659, 150 S.E. 177; *Chandler v. Jones*, 172 N.C. 569, 90 S.E. 580. However, the relationship of the parties before us does not arise out of such a contract.

Infancy does not protect a person from obligations or duties required of him by statute. Furthermore, it is immaterial that the statute imposing quasi contractual obligations or duties does not expressly mention infants so long as the statute, in its ordinary meaning, would include infants within its general terms. Annot., 42 Am. Jur. 2d, *Infants* Section 64; *McCall v. Parker*, 54 Mass. (13 Met.) 372.

In *McCall v. Parker, supra,* the court considered a statute which required one accused of being the father of an illegitimate child to post bond with sureties. In that case, the accused, a minor, signed the bond as principal, and, he and his sureties sought to avoid payment because of his minority at the time the bond was executed. The Massachusetts court, in rejecting this defense, in part, stated:

> The remaining objection to the action is that the defendants are not liable because the principal in the bond was a minor. To this objection, it has been answered that the statute requires that the party accused, under the bastardy act, should give bond, and there is no exception of minors, as there is in the Rev. Sts. c. 135, Sec. 20, as to witnesses, being married women or minors; and it has been argued, that it must, from the nature of the subject, have been intended that minors should not be excepted. And the rule laid down by Lord Wilmot, as to the construction of similar statutes, is applicable. He says, "Many cases have been put, where the law implies an exception, and takes infants out of general words, by what is called a virtual exception. I have looked through all the cases; and the only inference to be drawn from them is, that where the words of law, in their common and ordinary signification, are sufficient to include infants, the virtual exception must be drawn from the intention of the legislature, manifested by other parts of the law; from the general purpose and design of the law; and from the subject matter of it." *Earl of Buckinghamshire v. Drury, Wilmot, 194.* By this rule of construction, we are of the opinion that the Rev. Sts. c. 49, Sec. 1, must be so construed as to include infants.

The language of the Financial Responsibility Act leaves no doubt that the Legislature intended to make all financially irresponsible persons, including minors, subject to its provisions. Minors have long been accorded the privilege of driving in this State, G.S. 20-9(a), and the Legislature enacted G.S. 20-279.21 knowing full well that minors would come within its operative effect. Since the provisions of the Financial Responsibility Act imposed mandatory obligations upon the parties without any expression of assent by either of them, it follows, then, that neither party could of his own volition revoke or disaffirm the obligations created by law. See, 1 Corbin on Contracts, Sec. 19.

We hold that defendant's minority had no effect whatever upon the rights and liabilities imposed upon the parties by the Financial Responsibility Act. Therefore, the trial judge erred by instructing the jury on the issue of defendant's repudiation and disaffirmance of any benefits received from appellant.

[6] By cross assignment of error, defendant takes the position that plaintiff had no right to settle with McDonald and seek reimbursement because at the time of settlement plaintiff was not under legal obligation to make settlement. He directs our attention to the fact that suit had not been instituted and no formal claim had been filed with plaintiff or defendant.

The statute imposing mandatory obligations upon an insurer also expressly authorizes the insurer to negotiate and settle any claim covered by the policy. When exercised in good faith, these statutory provisions are valid and binding on the insured. G.S. 20-279.21(f)(3); *Bradford v. Kelly*, 260 N.C. 382, 132 S.E. 2d 886; *Alford v. Insurance Co.*, 248 N.C. 224, 103 S.E. 2d 8. This statutory authority is in accord with the policy provisions that exist between insurer and named insureds. *Liability Co. v. Aronofsky*, 308 Mass. 249, 31 N.E. 2d 837; 44 Am. Jur. 2d, *Insurance* Section 1524.

We hold that it was not incumbent upon plaintiff to wait until suit was filed or judgment entered before seeking to mitigate the absolute liabilities imposed upon it by statute.

In order for Nationwide to recover it will have to prove that defendant's negligence was the proximate cause of the injuries and damages suffered by McDonald and that the settlement made with McDonald was fair and made in good faith. In *Casualty Co.*

*v. Krol,* 324 Ill. App. 478, 58 N.E. 2d 473, the court reversed a judgment in favor of a defendant in a suit brought for reimbursement for a sum paid by the insurer under the Illinois Financial Responsbility Act. The court there, *inter alia,* stated:

> . . . In order to recover, plaintiff was of course obliged to prove that the settlement was fair, that defendant was liable to the claimants, and that the whole transaction was carried out in good faith. . . .

See also, *Casualty Co. v. Sauers,* 38 F. Supp. 656 (W.D. Pa.); *Liability Co. v. Aronofsky, supra.*

[7] The fact that defendant's negligence has not yet been determined does not bar Nationwide from proving it at the same trial in which it makes its claim for indemnity. We base this conclusion upon the same analogy to the employer who has been made a party defendant in an action based on his employee's negligence in which the employer is permitted to cross file against the employee for indemnity. See, *Steele v. Hauling Co.,* 260 N.C. 486, 133 S.E. 2d 197. We find no logical reason why under the facts of this case Nationwide should not be allowed to likewise prove both defendant's negligence and its own right to indemnification in the same trial.

For the reasons stated, there must be a new trial. At that trial the trial judge should submit the following issues:

1. Was Charles Edward McDonald injured and damaged by the negligence of defendant? _____

2. Was plaintiff's settlement with McDonald made in good faith? _____

3. Was plaintiff's settlement with McDonald fair and reasonable? _____

4. What amount is plaintiff entitled to recover? _____

The trial judge should instruct the jury that if they answer the first issue "No," the case is ended and judgment will be entered in favor of defendant. If the answer to the first issue is in the affirmative, the trial judge should instruct the jury to proceed to consider the second issue. If the jury answers the second issue "No," the case would be ended and judgment would be entered in favor of defendant. If the jury answers the second issue "Yes,"

they should proceed to consider the third issue. If the jury answers the third issue "Yes," the case is ended and the trial judge should enter judgment for plaintiff in the amount of $9,581.25 with interest from 5 April 1972. The trial judge should instruct the jury that if it answers the third issue "No," it should proceed to answer the fourth issue.

We do not deem it necessary to consider the remaining assignments and cross assignments of error since they may not arise at the next trial.

New trial.