Robert B. ANDERSON, Plaintiff,

v.

LANCASTER AVIATION, INC., a corporation defendant, Leonard M. "Lanny" Lancaster, an individual, Barry Hyde, an individual, In–Flight Aviation, Inc., a foreign corporation defendant, James Brewer, an individual, Signal Aviation Underwriters, a foreign corporation defendant, Underwriters Adjustment Bureau, Inc., a foreign corporation defendant, Ranger Insurance Co., a foreign corporation defendant, Defendants.

No. 1:01CV543.

United States District Court, M.D. North Carolina.

July 31, 2002.

Michael L. Minsker, Cozen and O'Connor, Charlotte, NC, for plaintiff.

Susan L. Hofer, Dean & Gobson, Charlotte, NC, for Lancaster Aviation, Inc, defendant.

Susan L. Hofer, Dean & Gobson, Charlotte, NC, Robert A. Mineo, Raleigh, NC, for Leonard M. "Lanny" Lancaster, defendant.

Larry I. Moore, III, Johnson Younce Moore & Moseley, L.L.P., Greensboro, NC, Susan L. Hofer, Dean & Gobson, Charlotte, NC, for In–Flight, Inc., James Brewer, Signal Aviation Underwriters, Inc., Underwriters Adjustment, Inc., defendants.

Gary S. Parsons, Bailey & Dixon, Raleigh, NC, for Ranger Ins. Co., defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Defendant Ranger Insurance Company's ("Ranger") Motion to Dismiss [Document # 18]. Ranger contends that Count Four of Plaintiff Robert B. Anderson's ["Plaintiff" or "Anderson"] Complaint should be dismissed as to Ranger, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim for relief.[1] For the following reasons, Ranger's Motion to Dismiss is DENIED.

---

**1.** The Court notes that Ranger's Motion to Dismiss broadly requests the Court to dismiss the instant *action* as to Ranger, and that Anderson's Complaint asserts two counts, Count Three and Count Four, against Ranger. However, Ranger's Brief in Support of Ranger's Motion to Dismiss requests only that the Court "dismiss Court IV [Four] of Plaintiff's action for failure to state a claim upon which relief can be granted." (Ranger's Brief Supp. Ranger's Mot. to Dismiss at 1.) Furthermore,

## I. BACKGROUND

Anderson's lawsuit originates as a result of an incident involving the forced emergency landing of a twin engine airplane in which Anderson was taking flight lessons. According to Anderson's Complaint, Defendants Lancaster Aviation, Inc. ("Lancaster Aviation") and Leonard M. "Lanny" Lancaster ("Lancaster") (together, "the Lancaster Defendants") offered lessons on certain types of airplanes. In January of 1998, Anderson first contacted the Lancaster Defendants about whether they could provide him with appropriate instruction on how to fly a twin engine airplane that the Lancaster Defendants owned. Plaintiff asserts that he and the Lancaster Defendants agreed upon a price for the Lancaster Defendants to provide Plaintiff flight instruction with a skilled flight instructor and the use of an appropriate airplane. Anderson contends that he informed the Lancaster Defendants that he was not then current with his Federal Aviation Administration ("FAA") flight license for either single engine or multi-engine aircraft, which meant that he needed supplemental flight hours as well as flight instruction to increase his flying skills proficiency.

Lancaster Defendants selected Defendant Barry Hyde ("Hyde") as Anderson's flight instructor. Beginning on May 28, 1998 and including May 29, 1998, Anderson paid for and received his first flight instructions in a single engine aircraft owned by the Lancaster Defendants. It was on May 31, 1998 that Anderson first received multi-engine flight instruction in a Piper PA–30 Comanche twin engine aircraft, number N7794Y ("Aircraft" or "Piper PA–30"), that was owned by the Lancaster Defendants. According to Plaintiff, the Piper PA–30 was an older aircraft with a cockpit layout that differed greatly from the cockpit layout of more modern multi-engine aircraft. Plaintiff notes that prior to beginning his flight instruction, the Lancaster Defendants either expressly or impliedly agreed as part of their contract with him that the Lancaster Defendants would provide Plaintiff with competent flight instruction in a safe and fully functional and fully insured airplane. On this first day of multi-engine flight instruction, Anderson, while accompanied by Hyde, flew the Piper PA–30 for approximately 2.1 hours. Another lesson was scheduled for the next day, June 1, 1998.

Anderson alleges, however, that his instructor Hyde was late for their scheduled June 1, 1998 session. Anderson and Hyde had planned a flight for this day that would take them from Concord, North Carolina to Lewisburg, West Virginia. Prior to Hyde's arrival, Anderson alleges that he attempted to make a pre-flight inspection of the Piper PA–30 by himself. It was Anderson's belief that the primary fuel tanks were full for the Piper PA–30 he was to use that day. Anderson further claims that, upon his late arrival, Hyde did not perform a pre-flight inspection of the fuel tanks prior to take-off because Hyde allegedly had been informed by the Lancaster Defendants that the tanks of the Piper PA–30 were full with sufficient fuel.

During the flight on June 1, 1998, the Piper PA–30's right engine began sputtering and generating blue smoke. At the sight of the smoke, the right engine was manually shut down. Anderson alleges that Hyde then informed the air traffic controllers at the Roanoke, Virginia airport that the Piper PA–30 would need

Ranger has presented no arguments in either its Brief or its Reply requesting dismissal as to Count Three. As Ranger has apparently abandoned its Motion to Dismiss as to Ranger has apparently abandoned its Motion to Dismiss as to Count Three, the Court will only address Ranger's Motion to Dismiss with respect to Count Four.

priority for an emergency landing. As the airplane was approaching the Roanoke airport with only the left engine operating, the left engine began to sputter, and it eventually shut down. Without either of the Piper PA–30's two engines functioning, Anderson claims that he had to execute a forced emergency landing. After the forced emergency landing was completed, it was determined that the inboard main fuel tanks contained no useable fuel. It was discovered, however, that the outboard auxiliary fuel tanks allegedly contained enough fuel to have fueled both engines of the Piper PA–30 for the duration of the flight to the Roanoke airport, which was the location initially selected for the emergency landing. As a result of this forced emergency landing, Anderson alleges that he has suffered serious and painful permanent injuries and emotional distress, and now seeks compensation and reimbursement for his injuries through this lawsuit.

Anderson's claims against Ranger in this lawsuit have arisen because of Anderson's contention that Ranger issued an insurance policy, identified as policy number GA87633 ("the Policy"), to the Lancaster Defendants which covered the Lancaster Defendants' aircraft, including the Piper PA–30. Anderson asserts that this Policy covered the Piper PA–30 and Anderson himself in his role as a student pilot or, alternatively, in his role as the lessor of the Piper PA–30. After the incident, Ranger hired James Brewer and Underwriters Adjustment Bureau, Inc., also named by Plaintiff as Defendants, to serve as an independent adjustor and accident investigator for the June 1, 1998 forced landing. Ranger also hired Defendants Signal Aviation Underwriters, Inc. and Defendant Underwriters Adjustment Bureau, Inc. for the handling of claims arising from the incident. Anderson asserts that he filed a proper insurance claim requesting complete indemnification and compensation for his losses, but that he did not receive a satisfactory response. In letters to James Brewer dated September 21, 1998, October 21, 1998, October 29, 1998, and December 14, 1998, Plaintiff, through his counsel, requested a response to his claims. In the October 29, 1998 and December 14, 1998 letters, Anderson's counsel, in addition to requesting a response to Anderson's claims, also requested a copy of the Lancaster Defendants' Policy which he believed covered this incident. In a letter from Defendant In–Flight Aviation on December 28, 1998, Anderson was informed that a copy of the Policy would be forthcoming, although Plaintiff's Complaint does not state whether Anderson ever received a copy of the Policy. A few days later, on December 31, 1998, Anderson received a letter from Defendant Universal Loss Management, Inc. that denied coverage of Anderson's claim for medical expenses. The alleged basis of the denial of coverage was the allegation that Anderson's medical expenses were not covered because he was the "pilot-in-command" of the Piper PA–30 on the day of the accident, June 1, 1998.

On May 31, 2001, Anderson filed this suit against Defendants Ranger, In–Flite Aviation, Inc., James Brewer, Signal Aviation Underwriters, Inc., and Underwriter Adjustment Bureau, Inc. (together, "the Insuring Defendants"), the Lancaster Defendants, and Hyde. Although the Complaint originally included four Counts, Anderson has voluntarily dismissed with prejudice the two Counts that asserted claims against the Lancaster Defendants and Hyde.[2] (Notice of Stipulation of Voluntary Dismissal with Prejudice [Document

---

**2.** In greater detail, Anderson alleged one count of negligence against the Lancaster Defendants and Hyde and one count of breach of contract against the Lancaster Defendants.

# 26] ). Consequently, the only remaining claims are Count Three and Count Four. In Count Three, Anderson requests a declaratory judgment as to Ranger's responsibilities under the Policy. Count Four, the subject of this Motion to Dismiss, is Anderson's claim that the Insuring Defendants, including Ranger, violated North Carolina statutes, §§ 58–63–10 *et seq.*, by engaging in prohibited activities with such frequency as to indicate a general business practice. Ranger now brings this Motion requesting that the Court dismiss Count Four of Anderson's Complaint for failure to state a claim, pursuant to Rule 12(b)(6).

## II. DISCUSSION

### A. Standard of Review

When deciding a Rule 12(b)(6) motion, the Court reviews the plaintiff's complaint using a relaxed standard, "accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Accordingly, dismissal is only appropriate when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). Relying on these principles, the Court now reviews Ranger's Motion to Dismiss.

### B. Anderson's Unfair Trade Practices Claim

### 1. Section 58–63–15(11) and Section 75–1.1

Ranger challenges Count Four of Anderson's claim, in which Anderson alleges that Ranger violated North Carolina's Insurance Unfair Trade Practices Act. N.C. Gen.Stat. §§ 58–63–10, 58–63–15. In support of this claim, Anderson asserts that Ranger, as a general business practice, engaged in several of the acts defined as unfair claim settlement practices by North Carolina's Insurance Unfair Trade Practices Act, N.C. Gen.Stat. § 58–63–15(11). (Pl.'s Compl. at 12.) Specifically, Ranger is accused of the following violations of § 58–63–15(11):

> (b) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> (c) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies,
>
> (d) refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> (e) failing to affirm or deny coverage within a reasonable time after proof-of-loss statements have been completed.

N.C. Gen.Stat. § 58–63–15(11)(b–e).

As an initial matter, the Court notes that the statute upon which Anderson relies for this claim, N.C. Gen.Stat. § 58–63–15(11), does not authorize a private cause of action. To the contrary, § 58–63–15(11) explicitly states that "no violation of this subsection shall of itself create any cause of action in favor of any person other than the Commissioner [of Insurance for North Carolina]." N.C. Gen.Stat. § 58–63–15(11). However, to survive a motion to dismiss, the plaintiff need not "specify the correct legal theory or point to the right statute." *Pope v. Inland Property Management, Inc.*, 878 F.Supp. 1114, 1116 (N.D.Ill.1995) (citing *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134–35 (7th Cir.1992)); *Thomas v. New York City*, 814 F.Supp. 1139, 1152 (E.D.N.Y.1993); *United States v. Provident Nat'l Bank*, 259 F.Supp. 373, 376–77 (E.D.Pa.1966). *See also Mo., Kan., & Tex.R.R. Co. v. Wulf*, 226 U.S. 570, 576, 33 S.Ct. 135, 137, 57

L.Ed. 355 (1913) (holding, prior to the enactment of Rule 12(b)(6), that even though a complaint erroneously based the cause of action on a superceded state statute instead of the superceding federal statute, the complaint was pled satisfactorily).

In this instance, while not specifically asserted by Anderson, there is another North Carolina statute that provides a cause of action based on the facts that Anderson alleges. North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen.Stat. § 75–1.1 *et seq.*, prohibits the use of unfair and deceptive trade practices in commerce and authorizes a private cause of action for a plaintiff who can demonstrate (1) an unfair or deceptive act or practice or unfair method of competition, (2) in or affecting commerce, which (3) proximately caused actual injury to the plaintiff. *Spartan Leasing Inc. v. Pollard,* 101 N.C.App. 450, 460, 400 S.E.2d 476, 482 (1991). Furthermore, a violation of N.C. Gen.Stat. § 58–63–15(11), can, as a matter of law, serve as the unfair or deceptive act or practice necessary for a violation of § 75–1.1.[3] *See Murray v. Nationwide Mut. Ins. Co.,* 123 N.C.App. 1, 10, 472 S.E.2d 358, 363 (1996) ("Violation of any form of conduct listed in § 58–63–15 operates as a per se instance of unfair and

deceptive trade practice under N.C. Gen. Stat. § 75–1.1."); N.C. Gen.Stat. § 75–1.1; *Miller v. Nationwide Mut. Ins. Co.,* 112 N.C.App. 295, 301, 435 S.E.2d 537, 541 (1993). Turning to Anderson's Complaint, the Court notes that Anderson asserts that Ranger engaged in conduct that violated § 58–63–15(11)(b–e) and that these acts caused him injury. These alleged facts would ordinarily suffice to demonstrate a right to relief that would preclude Ranger's motion to dismiss.

### 2. Anderson's § 75–1.1 Claim

Notwithstanding the private right of action provided by § 75–1.1 for a § 58–63–15(11) violation, Ranger requests dismissal of Anderson's Count Four because Ranger asserts that only the insured in an insurer-insured relationship can assert a § 75–1.1 violation based upon § 58–63–15(11). Ranger asserts that Anderson is not an insured, but is instead a third party seeking to recover from Ranger for the negligent acts of the Lancaster Defendants, who were Ranger's insureds. Anderson objects to Ranger's statement of the law, asserting that he does indeed have a right to sue under § 75–1.1 based on the coverage that the Policy provided for student

---

**3.** To state a claim under § 75–1.1 based on a *violation* of § 58–63–15(11), the plaintiff must allege that the defendant engaged in the listed practice "with such frequency to indicate a general business practice." N.C. Gen.Stat. § 58–63–15(11). Anderson has in his Complaint alleged that Ranger violated § 58–63–15(11)(b)–(e) with the necessary frequency. At this stage of the proceedings, Anderson's statement satisfies the frequency element for a § 75–1.1 violation based upon a § 58–63–15(11) violation.

In order to be comprehensive in its discussion of § 75–1.1 and § 58–63–15(11), the Court notes that, in addition to the right of action allowed under § 75–1.1 for a violation of § 58–63–15, a recent North Carolina Supreme Court decision has also provided a method through which the conduct described

in § 58–63–15(11), in some instances, can be used as the basis for a § 75–1.1 violation even if the plaintiff cannot demonstrate the element of frequency necessary for a § 58–63–15(11) violation. In *Gray v. N.C. Ins. Underwriting Ass'n,* 352 N.C. 61, 529 S.E.2d 676 (2000), the North Carolina Supreme Court held that the conduct defined in § 58–63–15(11)(f) violates § 75–1.1 as a matter of law even without a demonstration of frequency. Although *Gray* only addressed § 58–63–15(11)(f), which Anderson has not referenced in his Complaint, the North Carolina Court of Appeals has extended *Gray* 's reasoning to all of the lettered subsections in § 58–63–15(11). *Country Club of Johnston County, Inc. v. U.S. Fid. & Guar. Co.,* 563 S.E.2d 269, 2002 WL 1012513 (N.C.App. May 21, 2002).

pilots, as he contends that he was at the time of the June 1, 1998 forced landing. (Def. Ranger's Answer, Attach. A, Policy GA87633, at 2.)

The question of whether a party bringing a claim against an insurance company's insured because of that insured's negligence can assert against the insurer a § 75–1.1 violation is not answered by § 75–1.1 itself. The Act grants those persons "injured" by unfair and deceptive trade practices a right to sue, but offers no further definition of injury. N.C. Gen. Stat. § 75–16. While the North Carolina Supreme Court has not yet decided this question, the North Carolina Court of Appeals, in *Wilson v. Wilson,* 121 N.C.App. 662, 468 S.E.2d 495 (1996), reached this very issue. In *Wilson,* the Court of Appeals determined that, in the context of § 75–1.1 violations, one who seeks recovery from an insurance company due to the allegedly negligent acts of the insurance company's insured is not the injured party that North Carolina's unfair trade practices laws seek to protect. *Id.* at 665, 468 S.E.2d at 497. Consequently, the *Wilson* court found that a party who is not an insured of nor in privity with the insurance company has no right to assert a cause of action for unfair claim settlement practices pursuant to the unfair trade practices laws, such as N.C. Gen.Stat. § 58–63–15 and § 75–1.1, against the insurance company itself. *Id.*

■ After reviewing the arguments of the parties and the applicable law, this Court finds that the *Wilson* court's decision is persuasive. The *Wilson* court correctly notes that in the North Carolina Supreme Court decision that classifies a violation of § 58–63–15 as a per se § 75–1.1 violation, *Pearce v. Am. Defender Life Ins. Co.,* 316 N.C. 461, 343 S.E.2d 174 (1986), the plaintiff was the insured's estate and as such was in privity with the insurer. *Wilson* at 665, 468 S.E.2d at 497.

Furthermore, the *Wilson* court reasoned that the purpose of § 75–1.1 would be better served if the private recourse authorized under this statute for violations of § 58–63–15(11) is not automatically available to individuals beyond the insured and those in privity with the insurer. *Wilson,* 121 N.C.App. at 666–67, 468 S.E.2d at 498–99. As the *Wilson* court emphasized, granting a party who asserts a right to recovery under another's insurance policy the right to sue the insurance company under the UDTPA may present a conflict of interest for the insurance company. *Id.* at 667, 468 S.E.2d at 498. The claimant's threat to bring an unfair trade practices lawsuit act against the insurer may pressure the insurer to provide a more favorable settlement to the claimant. *Id.* Such pressure could compromise the insurance company's duty to "safeguard the interests of its insured." *Id.* Solving this conflict by preventing adverse parties who are not the insured or in privity with the insurer from bringing an unfair trade practices lawsuit is a resolution adopted by other courts which have reached this issue. As noted in *Wilson,* most of the courts reaching this issue with respect to similar state statutes have concluded that an adverse third party cannot bring an unfair trade practices claim against the insurance company. *Id.* at 665–66, 468 S.E.2d at 497–98 (listing the citations for the decisions in eighteen states where the courts have reached the same decision as *Wilson* and the citations for the five state decisions reaching the opposite conclusion). For these reasons, the Court agrees with the *Wilson* court that a third party who is not the insured and is not in privity with the insurer does not have a cause of action against the insurance company under § 75–1.1 based upon § 58–63–15(11). Accordingly, Ranger's Motion to Dismiss Anderson's unfair trade and deceptive practices claim may be properly granted only if there is no set of

facts under which Anderson could demonstrate that he is either an actual insured of Ranger or is in privity with Ranger. The Court will now consider whether Anderson is in contractual privity with Ranger so as to allow Anderson to assert his § 75–1.1 unfair and deceptive trade practices claim based upon a violation of § 58–63–15(11).

The North Carolina Court of Appeals has held that in certain instances, a person asserting a claim against an insured is in privity with the insurer if the person is an intended third-party beneficiary to the insurance contract. *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C.App. 1, 15, 472 S.E.2d 358, 366 (1996). In order to demonstrate that he is a third-party beneficiary to another's contract, the party must show (1) that there is a "contract between two other persons, (2) that the contract was valid and enforceable, and (3) that the contract was entered into for his direct, not incidental benefit." *United Leasing Corp. v. Miller*, 45 N.C.App. 400, 405–06, 263 S.E.2d 313, 317 (1980).

Anderson's Complaint easily meets the first two requirements, for it alleges that there was a valid insurance contract between Ranger and the Lancaster Defendants. (Pl.'s Compl. ¶ 45.) As to the third requirement, determining if Anderson has properly asserted that the contract was entered into for his direct benefit requires a review of the Policy central to this controversy. However, Anderson did not attach the Policy to Anderson's Complaint. Ordinarily, when a court references documents outside of the Complaint to resolve a motion to dismiss, Rule 12(b) requires that the motion be treated as a motion for summary judgment instead of as a motion to dismiss. Fed.R.Civ.P. 12(b). However, a court that is ruling on a motion to dismiss may consider a document beyond the Complaint if the document "is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.30[4] (3d ed.1998)). In this instance, it is appropriate for the Court to review the Policy itself, because Anderson's Complaint repeatedly references the Policy. Also, the Policy is central to two of Anderson's claims, Count Three and Count Four, for the Policy provides the basis for Ranger's alleged liability to Anderson. Accordingly, the Court finds that it has the authority to consider the Ranger Policy without transforming the Motion to Dismiss into a Motion for Summary Judgment.

Under the Policy, Ranger contends that the Lancaster Defendants receive limited types of insurance coverage. In particular, Ranger asserts that the Policy at issue covers physical damage to the aircraft and the Lancaster Defendants' liability, as the insureds, to others for bodily injury and property damage. (Def. Ranger Ins. Co.'s Ans., Attachment 1.) Coverage under the policy for the liability of the Lancaster Defendants is provided up to $100,000 per person and $1,000,000 per occurrence. *Id.* Relevant to the question of whether Anderson is in privity with Ranger, the Policy also includes a "Renter Pilot Extension" ("Extension"), which provides limited additional protection to qualified student pilots for their liability, up to a limit of $25,000, for property damage and bodily injury to persons. *Id.* The Policy indicates that the Renter Pilot Extension expands the coverage of the Policy "to protect a student pilot or renter pilot."[4] *Id.* This protection is limited, however, in that while the Renter Pilot Extension covers, to

---

4. This Extension, however, does not change the total liability covered under the Policy, which remains $100,000 per person and $1,000,000 per occurrence. (Def. Ranger Ins. Co.'s Ans., Attachment 1.)

a limited extent, the liability of a student pilot, the Extension does not provide any coverage for the student pilot's own injuries or medical expenses.

■ As the Renter Pilot Extension of the Policy, by its own terms, exists to benefit the Lancaster Defendants' student pilots where there is an issue of their own liability, the Renter Pilot Extension directly benefits the student pilots. Anderson has appropriately alleged that he was a student pilot operating the Piper PA–30 owned by the Lancaster Defendants and insured by Ranger. Accordingly, the Court finds that the protection afforded to student pilots by the Policy provides Anderson with the appropriate status to bring suit under UDTPA, that is, as one in contractual privity with Ranger for coverage under the Policy by virtue of his status as a third-party beneficiary of the insurance contract between Ranger and the Lancaster Defendants.[5] As such, because Anderson is in privity with Ranger based on the Renter Pilot Extension, Anderson may assert a § 75–1.1 claim against Ranger for Ranger's misconduct as to its handling of insurance claims and Anderson's inquiries relating to the coverage provided by the Renter Pilot Extension. However, the Court clarifies that Anderson's § 75–1.1 claim could only be based on Ranger's treatment of Anderson's claims for coverage that are specifically covered by the Renter Pilot Extension. In other words, the privity provided to Anderson by the Renter Pilot Extension does not allow him to assert that Ranger's allegedly unfair treatment of Anderson's claims for medical expenses qualifies as an unfair and deceptive trade practice, because his own medical expenses in this instance are not covered by the terms of the Renter Pilot Extension.

As the Court's above finding allows Anderson to assert a § 75–1.1 claim but limits the § 75–1.1 claim to Ranger's conduct with respect to the coverage authorized by the Renter Pilot Extension, Anderson also alleges a second, broader basis for privity that would allow Anderson to bring a § 75–1.1 claim based upon Ranger's treatment of Anderson's requests for reimbursement of his own medical expenses based on the Lancaster Defendants' negligence. In essence, Anderson asserts that the Court should also find that he is a third-party beneficiary in privity with Ranger because he was injured by the Lancaster Defendants' negligence. Recognizing that this argument appears to be in direct contradiction with *Wilson*'s holding that an adverse party asserting recovery based upon the negligence of the insurance company's insured cannot raise a § 75–1.1 claim against the insurance company, Anderson attempts to support his argument with the particular factual basis of the North Carolina Court of Appeals's decision in *Murray*. In *Murray*, the plaintiff asserted a § 75–1.1 violation against two insurance companies based upon the insurance companies' treatment of his claim when he was injured in a

---

**5.** To the extent that the Court's decision relies on *Murray*'s holding that a third-party beneficiary to a contract is in privity with the insurer for purposes of asserting an UDTPA claim, it is necessary to address one additional argument of Ranger's. Ranger contends that the *Murray* court's decision was based on the case's unique facts, for the alleged UDTPA violation occurred after a court had already ruled that the insurance companies involved in the case were liable to the plaintiff for a specified amount. Ranger's limitation of *Murray* to the particular factual scenario involved is unpersuasive, however, for the *Murray* court explicitly stated, with respect to the plaintiff's UDTPA claim, that "the instant plaintiff is in contractual privity with [the insurance companies] and, *for this reason alone*, is not bound by the third-party restrictions set forth in *Wilson*." *Murray*, 123 N.C.App. at 15, 472 S.E.2d at 366 (emphasis added).

vehicle accident caused by the negligence of the insurance companies' insured. *Murray*, 123 N.C.App. at 4, 472 S.E.2d at 359. After reviewing the case, the *Murray* court determined that, because the insurance policies were issued to protect innocent third parties who might be injured by a driver's negligence, the plaintiff was a third-party beneficiary who was in privity with the insurers for § 75–1.1 purposes. *Id.* at 15, 472 S.E.2d at 366. However, the *Murray* court distinguished its holding from *Wilson* by emphasizing that, in *Murray*, the insurance coverage for motor vehicles was statutorily mandated in order to protect not the insured, but those injured by the insured's negligence. *Id.* The *Murray* court therefore held that, when the rights granted under the insurance policy to an injured party are "statutory and become absolute as to the liability insurer upon the occurrence of injury or damage inflicted by the named insured", the injured party is in fact a third-party beneficiary to the insurance contract and for that reason can assert a § 75–1.1 claim against the insurer relating to the insurer's treatment of the injured party's claim for reimbursement. *Id.* (brackets omitted) (quoting *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 440–41, 238 S.E.2d 597, 604 (1977)).

█ Unlike the plaintiff in *Murray*, however, Anderson has not presented to the Court any information suggesting that the Lancaster Defendants were similarly required by North Carolina law to carry certain specified insurance for the Lancaster Defendants' aircraft. Without such a

showing, the Court finds that Anderson's circumstances more closely resemble that of the unsuccessful plaintiff in *Wilson* than the successful plaintiff in *Murray*. Accordingly, the Court concludes that the mere fact that the Policy covers the Lancaster Defendants if they are found liable for another's bodily injury does not place Ranger in privity with Anderson as to his own medical expenses, where he has alleged that he incurred medical expenses because of the Lancaster Defendants' negligence. Anderson therefore cannot assert a § 75–1.1 claim to the extent he disputes Ranger's treatment of his claim for coverage of his medical expenses. The Court emphasizes that, although Anderson is in privity with Ranger, his privity, and consequently the basis for his § 75–1.1 claim, is limited to Ranger's conduct with respect to any protection provided to Anderson by the Renter Pilot Extension.

In light of the Court's determination that Anderson is, pursuant to the Renter Pilot's Extension, in privity with Ranger for the purposes of asserting a § 75–1.1 claim, Ranger also presents an additional argument for the dismissal of Anderson's § 75–1.1 claim. Ranger asserts that, even if Anderson could bring a § 75–1.1 claim based on his status as a third-party beneficiary covered by the Renter Pilot Extension, Anderson's Complaint does not assert that Ranger acted in an unfair or deceptive manner with respect to the coverage provided by the Extension. Ranger bases this statement on the fact that certain correspondence [6] referenced in the Complaint demonstrates that Anderson's

---

**6.** In greater detail, five of these letters were written by Plaintiff's attorney to various members of the Insuring Defendants on the following dates: September 21, 1998, October 21, 1998, October 29, 1998, December 14, 1998, and February 11, 1999. (Ranger's Reply Brief Supp. Def. Ranger's Mot. to Dismiss, Attachments I–IV, VII.) Of the remaining two letters, one was written by Insuring Defen-

dant In–Flight Aviation to Plaintiff's attorney on December 31, 1998 to acknowledge the receipt of Anderson's December 28, 1998 letter, and the other was written by Insuring Defendant Universal Loss Management, Inc. to Plaintiff's Attorney on December 31, 1998 in response to the earlier letters of Plaintiff's attorney. *Id.*, Attachments V, VI.

asserted § 75–1.1 claim relies solely and exclusively on the adequacy of Ranger's response to Anderson's requests for coverage of his medical expenses. Ranger therefore submits that because Anderson's § 75–1.1 claim is solely based on Ranger's treatment of Anderson's requests for coverage of his medical expenses, which is not covered by the Renter Pilot Extension, Anderson fails to state a § 75–1.1 claim that arises from his contractual privity with Ranger under the Renter Pilot Extension.

The Court notes that it has already determined that Anderson's right to assert a § 75–1.1 claim is derived from the coverage provided under the Renter Pilot Extension. The Court further finds that, because the Renter Pilot Extension does not cover the student pilot's own medical expenses, Ranger's actions regarding Anderson's requests for medical expenses cannot be used to support Anderson's UDTPA claim. However, while recognizing that Anderson's § 75–1.1 claim is limited to Ranger's conduct relating to the coverage provided by the Renter Pilot Extension, the Court cannot at this time conclude, as Ranger contends, that Anderson's Complaint fails to state any claim upon which relief can be granted. *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84.

In order to state his § 75–1.1 claim, Anderson's Complaint must allege that he is an insured or in privity with the insurer and that, through this relationship, he was injured by an unfair and deceptive trade practice occurring in commerce. N.C. Gen.Stat. § 75–1.1. Turning to Anderson's Complaint, the Court notes that it alleges that Policy No. GA87633 covers the Piper PA–30 and covers Anderson, as a student pilot or lessor of the plane. (Pl.'s Compl. ¶ 45.) The Complaint further states that Defendant Ranger committed several of the unfair and deceptive trade practices defined in N.C. Gen.Stat. § 58–63–15(11)(b–e).[7] Although the correspondence between Anderson and Ranger is mentioned in the Complaint and does focus almost exclusively on Anderson's claims for his own medical expenses, the Complaint does not allege that this correspondence is Anderson's only support for his claim. Furthermore, the pleadings indicate that Anderson's rights under the Renter Pilot Extension might indeed have been activated by the June 1, 1998 forced landing, for Ranger asserts in its Answer that it has settled certain claims against Anderson. The final element of a § 75–1.1 claim is also alleged in the Complaint in Paragraph 83, which states that Anderson has "suffered severe and permanent injuries for which the insurance policy in question was to have afforded insurance protection." (Pl.'s Compl. ¶ 83.) Accordingly, based on the face of Anderson's Complaint,

---

7. More specifically, Anderson's Complaint alleges the following:

> Defendant Ranger Insurance Company in conjunction with its agents, brokers and Insuring Defendants, violated the North Carolina Unfair Trade Practices Act N.C.G.S. §§ 58–63–15, *et seq.* in that they engaged in activities in this case with such frequency as to indicate a general business practice to:
> (A) fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policy GA 87633 (including the failure to promptly provide a copy of the applicable insurance policy);
> (B) fail to adopt and implement reasonable standards for the prompt and accurate investigating of claims arising under its insurance policies;
> (C) refuse to pay a valid claim without conducting a reasonable investigation based upon all available information; and,
> (D) fail to affirm or deny coverage in a reasonable period of time after proper proof of loss was submitted.
>
> (Pl.'s Compl. ¶ 81.)

 

the Court cannot conclude that Anderson can prove no set of facts to support his § 75–1.1 claim arising from the limited liability coverage that the Renter Pilot Extension provides to Anderson because of his student pilot status.

As the Court has determined that Plaintiff has satisfactorily stated a claim under § 75–1.1, it would be improper to dismiss the action at this early stage of the proceedings. Consequently, Ranger's Motion to Dismiss Count Four of Anderson's Complaint is DENIED to the extent that Anderson asserts a § 75–1.1 claim based upon the Policy coverage provided to him pursuant to the Renter Pilot Extension. However, the Court reiterates that Anderson's § 75–1.1 claim does not survive to the extent he attempts to base his claim upon Ranger's actions with respect to Anderson's request for coverage of his own medical expenses.

## III. CONCLUSION

For the reasons discussed above, Ranger has not sufficiently demonstrated that Count Four of Anderson's Complaint fails entirely to state any claim upon which relief could be granted. Accordingly, Ranger's Motion to Dismiss [Document # 18] is DENIED to the extent that Anderson asserts a § 75–1.1 claim based upon Ranger's conduct involving the Renter Pilot Extension. In all other respects, Anderson's attempt to assert a § 75–1.1 claim against Ranger fails for the reasons stated herein, particularly as it may have involved the negligence of the Lancaster Defendants.

An ORDER consistent with this Memorandum Opinion will be entered contemporaneously herewith.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Defendant Ranger Insurance Company's Motion to Dismiss Count Four of Plaintiff Anderson's Complaint [Document # 18] is DENIED to the extent that Anderson asserts a § 75–1.1 claim based upon Ranger's conduct involving the Renter Pilot Extension. In all other respects, Anderson's attempt to assert a § 75–1.1 claim against Ranger fails for the reasons stated herein, particularly as it may have involved the negligence of the Lancaster Defendants.